**BUNCH ELECTRIC COMPANY, Appellant,**

v.

**TEX–CRAFT BUILDERS, INC., et al.,**
**Appellees.**

**No. 596.**

Court of Civil Appeals of Texas,
Tyler.

April 27, 1972.

Akin, Vial, Hamilton, Koch & Tubb, Charles J. McGuire, Dallas, for appellant.

Mays, Moore, Dickson & Roberts, Inc., Aubrey L. Roberts, Jr., Sweetwater, for appellee, Continental Casualty Co.

No brief filed for appellee, Tex-Craft Builders, Inc.

MOORE, Justice.

This is a suit by a subcontractor against a prime contractor arising out of the construction of a public housing project in Crockett, Houston County, Texas. Appellant, Bunch Electric Company (hereinafter referred to as Bunch), an electrical subcontractor on said project, brought suit for labor and materials furnished as well as for unpaid retainage against the prime contractor, Tex-Craft Builders, Inc. (hereinafter referred to as Tex-Craft), and Continental Casualty Company of Illinois (hereinafter referred to as Continental), the surety on Tex-Craft's payment bond. Also named as a defendant was the housing authority commissioning the construction, Housing Authority of the City of Crockett (hereinafter referred to as the Housing Authority). The suit was brought under the provisions of Article 5160, Vernon's Annotated Civil Statutes. Defendants answered with a special denial and also with an unverified special denial, denying that they had received notice of the claim.

Trial was had before the court sitting without a jury. The trial court rendered judgment in favor of appellant, Bunch, against the prime contractor, Tex-Craft, for $13,815.91, the balance due under the contract, but denied a recovery against Continental and the Housing Authority. Appellant, Bunch, duly perfected this appeal complaining of the trial court's action in refusing to render a joint and several judgment against the bonding company, Continental, for the $13,815.91 upon its payment bond, and also appealed from the judgment denying a recovery against the Housing Authority. Defendant, Tex-Craft, did not appeal.

We affirm the judgment of the trial court.

The primary question, raised by appellant's fourth point, is whether or not Bunch discharged its burden of proving that it gave Continental notice of the claim within the ninety-day period allowed by the Statute.

**44**

In response to appellant's request, the trial court filed the following findings of fact and conclusions of law: Under findings of fact the trial court found: "1. (a) Tex-Craft Builders, Inc., as general contractor, entered into a construction contract with the Housing Authority of the City of Crockett, Texas, dated September 28, 1964, as owner, to construct a project known as the Crockett Housing Project. (b) The contract between Tex-Craft and the Housing Authority was subject to modification and change by the parties, and the suggested time for completion was April 1, 1966. But such contract could by mutual agreement be extended and, in fact, was. (c) Continental Casualty Company executed a performance bond or payment bond in the amount of $1,644,000.00, pursuant to the requirements of Article 5160, Vernon's Annotated Civil Statutes. (d) On or about December 14, 1964, Tex-Craft Builders, Inc. and Bunch Electric Company entered into a contract calling for the performance of the electrical work on the housing project. (e) Bunch Electric Company completed its contract for the electrical work. 2. The Court finds that $13,815.91 is the remaining unpaid balance of the contract amount. 3. The Court finds that of the sum of $13,815.91, $8,896.64 was retainage. 4. By letter dated April 18, 1967, Bunch Electric Company gave a form of written notice to 'Tex-Craft Builders, Inc. concerning the remaining unpaid balance of their contract in the amount of $13,815.91. 5. The plaintiff sent a notice on July 10, 1967, but said notice was not for materials or labor performed, but was in the way of alleged special damages. 6. Bunch Electric Company last performed labor or supplied materials to the housing project on November 25, 1966. The Crockett Housing Authority accepted the project on December 13, 1966, and this was the final completion date and the date when all the work had been successfully completed to the satisfaction of the Housing Authority, and they did on that date accept the project as completed. 7. There is no showing that Continental Casualty Company ever received notice of the plaintiff's claim. The Court does find that it received notice as of July 13, 1967, the date that plaintiff filed suit. 8. The original answer of Continental Casualty Company filed in the above entitled matter raises the defense of timeliness as to the notice required. A part of the plaintiff's case is to prove that notice was given pursuant to Article 5160, Vernon's Annotated Civil Statutes, and the answer filed by the defendant raises the issue of timeliness of notice. 9. A detailed analysis of the causes of delay was submitted to the Housing Authority by Tex-Craft Builders, Inc. A portion of it was due to weather; a portion of it was due to the default of some of the sub-contractors, and Tex-Craft is not responsible for the delay of the project. 10. Tex-Craft Builders, Inc. did not fail to properly coordinate and supervise the project." Under Conclusions of Law, the trial court found: "1. The responsibility of Continental Casualty Company is controlled by Article 5160, Vernon's Annotated Civil Statutes. The notice dated April 18, 1967, if it had been received by the defendants, would in part have satisfied the requirements of Article 5160, but not in whole. A detailed description of the labor performed or the material furnished is lacking in the entire notice. 2. Tex-Craft Builders, Inc. had a duty to supervise and coordinate the project in regard to the erection of the housing project as to all of the sub-contractors. 3. Tex-Craft Builders, Inc. did not breach any duty it owed to the plaintiff. 4. Continental Casualty Company is not liable to the plaintiff in any particular. The bonding company is responsible for material and labor furnished and not paid for, and then only when proper, sufficient and timely notice has been given. The plaintiff herein failed to give proper and timely notice to the bonding company, and the 'special damages' are not for material and labor, but are merely speculative on the part of the plaintiff, for which there is no responsibility."

Article 5160, supra, as amended by Acts 1969, 61st Leg., p. 1390, ch. 422, requires a

claimant to give notice of claims for unpaid bills as well as notice of claims for retainage. The statute reads, in part, as follows:

"B. (a) Notices Required for Unpaid Bills, other than notices solely for Retainages as hereinafter described.

"Such claimant shall have given within ninety (90) days after the 10th day of the month next following each month in which the labor was done or performed, in whole or in part, or material was delivered, in whole or in part, for which such claim is made, written notices of the claim by certified or registered mail, addressed to the prime contractor at his last known business address, or at his residence, and to the surety or sureties. * * * "

"B. (c) Notices of Unpaid Retainages Required. Retainage Defined.

"Retainage as referred to in this Act is defined as any amount representing any part of the contract payments which are not required to be paid to the claimant within the month next following the month in which the labor was done or material furnished or both.

"When a contract between the prime contractor and such claimant, or between a subcontractor and such claimant provides for retainage, such claimant shall have given, on or before ninety (90) days after the final completion of the contract between the prime contractor and the awarding authority, written notices of the claim for such retainage by certified or registered mail to the prime contractor at his last known business address, or at his home address, and to the surety or sureties. * * * "

■ The statute provides the procedure and remedy for presenting a claim against the bond. It has been held that the statute is mandatory as well as exclusive; that it must be complied with in all respects or a cause of action under it is not maintainable. 47 Tex.Jur.2d sec. 41, p. 502; Employers' Liability Assur. Corporation v. Young County Lumber Co., 122 Tex. 647, 64 S.W.2d 339; Fidelity & Deposit Co. v. Big Three Welding Equipment Co., Inc., 151 Tex. 278, 249 S.W.2d 183 (1952); Indemnity Ins. Co. v. South Texas Lumber Co., 29 S.W.2d 1009 (Tex.Com.App., 1930). Therefore a claimant must follow the procedure provided therein.

■ The requirement of notice within ninety (90) days is not a mere statute of limitation, but is a substantive condition precedent to the existence of the cause of action. General Casualty Co. of America v. United States, 205 F.2d 753, 755 (Fifth Circuit). Consequently appellant had the burden of proving that notice had been given by certified or registered mail as provided by the statute or by showing substantial compliance by proving actual notice within the ninety-day period. Tex-Craft Builders, Inc. v. Allied Constructors of Houston, 465 S.W.2d 786 (Tex.Civ. App., Tyler, 1971, writ ref., n. r. e.); H. Richards Oil Company v. W. S. Luckie, Inc., 391 S.W.2d 135 (Tex.Civ.App., Austin, 1965, writ ref., n. r. e.); United Benefit Fire Insurance Company v. Metropolitan Plumbing Company, 363 S.W.2d 843, 849 (Tex.Civ.App., El Paso, 1962, n. w. h.).

■ Appellant argues first that Continental had actual notice of the claim. This argument is based upon the fact that during the trial Continental's attorney admitted that he "personally" received a copy of the notice in the mail. However there is nothing in the record to suggest that Continental's trial attorney was the agent or attorney-in-fact for Continental or was otherwise authorized to accept the notice. Under these circumstances we fail to see how notice to the attorney would be sufficient to prove actual notice to Continental.

The only proof with respect to the giving of notice by mail is to be found in the testimony of Ralph Bunch, a partner in Bunch. In the course of his testimony he identified an instrument dated April 18th

and testified it was a copy of the notice of claim. He testified that a copy of the notice was mailed to Continental. He did not state the date on which the notice was deposited in the mail nor did he identify the person who mailed the instrument. There is no evidence that the envelope was properly addressed or contained sufficient postage. It is undisputed that the notice was not sent by certified or registered mail. There is no evidence that Continental ever received the notice.

■ In creating the right of action, the legislature imposed conditions upon its exercise. By specifying that the notice be sent by certified or registered mail, the statute, in effect, specifies the type of proof required in order to show that the notice was deposited in the mail. Appellant failed to offer any proof showing the notice of the claim was sent by certified or registered mail. In the absence of any showing of actual notice, the provisions requiring notice be sent by certified or registered mail is mandatory. Fidelity & Deposit Co. v. Big Three Welding Equip. Co., Inc., supra. Having failed to offer proof showing the notice was mailed to Continental by certified or registered mail in accordance with the provision of Article 5160, appellant failed to establish the existence of a cause of action and therefore would not be entitled to a recovery against the surety.

■ By the sixth point appellant urges Continental waived notice by failing to deny lack of notice under oath as required by Rule 93(m), Texas Rules of Civil Procedure. We do not agree.

Rule 93, Texas Rules of Civil Procedure, provides that unless the truth of such matters appears of record, certain enumerated pleas shall be under oath. Section (m) provides that the following plea shall be verified by affidavit.

"That notice and proof of loss or claim for damage has not been given, as alleged. Unless such plea is filed such notice and proof shall be presumed and no evidence to the contrary shall be admitted. A denial of such notice or such proof shall be made specifically and with particularity."

While we have been unable to find any case directly in point, and have been cited none, we have concluded that Rule 93(m) has no application to the facts presented here.

■ It is settled that the provisions of Article 5160 are by law incorporated in and become a part of the contract between the prime contractor and a subcontractor. 47 Tex.Jur.2d, Public Works and Contracts, sec. 17, p. 476. Thus, the notice provisions of the statute, both as to unpaid bills as well as notice for unpaid retainage, become a part of the contract.

Directing our attention to the notice for unpaid bills, the record shows that the parties agreed that the contract price of $88,896.38 was to be paid Bunch in periodical payments, payable monthly in the amount of 90% of the labor and material in place based on a monthly estimate to be furnished by Bunch. By reading the statute into the contract, we find that the parties agreed that where the prime contractor failed to make such payment, appellant agreed to mail the prime contractor and surety a verified itemized account by certified or registered mail substantiating the estimate. One of the purposes of the verified account was to prove to the prime contractor and the surety, under penalty of false swearing, that the appellant had actually delivered the material and performed the labor shown by his estimate and was thereby entitled to the advancement of the funds. It is not a notice of proof of loss or a claim for damage but only contractual notice showing the work performed upon which liability may or may not result, dependent on its being given in the time and manner stipulated in the statute. Its purpose, among others, was to require the subcontractor to perform or else not get paid and also to give the prime contractor and

surety an opportunity to investigate the circumstances and protect themselves against the possibility that the subcontractor would draw down all the funds and not be financially able to complete the contract. Since the giving of timely notice of the verified, itemized account by certified or registered mail is contractual by virtue of the statute, the procedure agreed to and provided by statute becomes a substantive condition precedent to appellant's cause of action. If this be the case, lack of notice may be raised by a general denial, and therefore Continental would not be required to follow Rule 93(m).

We are likewise of the opinion that Rule 93(m) has no application to the notice of claim for unpaid retainage. The notice of claim for retainage is not a proof of loss or a claim for damages. It is merely a notice of the contractor's contention that he has fully performed and is entitled to full payment. It amounts to nothing more than a contractual notice upon which a claim for damages may or may not result, depending upon whether it was given in the manner and time stipulated for delivery under the contract. For this reason and others noted above, we hold that Continental was not required to deny lack of notice under oath as provided in Rule 93(m). See Lone Star Finance Co. v. Universal Automobile Ins. Co., 28 S.W.2d 573 (Tex. Civ.App., Galveston, 1930, n. w. h.); National Surety Corporation v. Diggs, 272 S. W.2d 604 (Tex.Civ.App., Ft. Worth, 1954, ref., n. r. e.).

■ By the seventh and final point appellant urges that the court erred in refusing to grant judgment against the Housing Authority for $13,815.91 out of the retainage due Tex-Craft because appellant says the Housing Authority "merely assumed the position of a 'stakeholder' awaiting judgment against Tex-Craft." Appellant cites no authority for this proposition and we fail to find any.

Since the contract involved public work and the prime contract exceeded the sum of $2,000.00, the sole and only remedy available to appellant was provided by Article 5160. "The former (statute) gives no lien on anything, but establishes a personal right to go against the bond." 47 Tex. Jur.2d, sec. 54, p. 513. While the Housing Authority acknowledged it held retainage of $31,000.00 due Tex-Craft, we fail to find anything in the statute which would create any sort of statutory garnishment of the funds in favor of the creditors of Tex-Craft. We think appellant's position in this respect is wholly without merit.

In view of our conclusion that no liability exists on the bond, we do not reach the remaining points.

The judgment of the trial court is affirmed.