**S.A. MAXWELL COMPANY, Appellant,**

v.

**R.C. SMALL & ASSOCIATES, INC., Great American Insurance Company and the American National Fire Insurance Company, Appellees.**

No. 05–93–00012–CV.

Court of Appeals of Texas,
Dallas.

Feb. 18, 1994.

Rehearing Denied March 29, 1994.

Arthur M. Meyer, Jr. and David J. Apple, Dallas, for appellant.

Steven K. Kennedy and Paul H. Sanderford, Dallas, for appellees.

Before LAGARDE, MALONEY and ROSENBERG, JJ.

## OPINION

ROSENBERG, Justice.

This appeal arises out of a suit under the McGregor Act for recovery on a contractor's payment bond. S.A. Maxwell Company (S.A. Maxwell) appeals the trial court's decision on the parties' opposing motions for summary judgment. S.A. Maxwell brings two points of error contending that the trial court erred in denying its cross-motion for summary judgment and granting summary judgment in favor of R.C. Small and Associates, Inc. (R.C. Small), Great American Insurance Company, and The American National Fire Insurance Company (collectively Great American). S.A. Maxwell contends (1) that its first notice of nonpayment was timely under the McGregor Act and (2) that both of its notices substantially complied with the McGregor Act's substantive requirements. In one cross-point of error, R.C. Small contends that the trial court abused its discretion in not awarding attorney's fees to R.C. Small as the prevailing party in an action under the McGregor Act.

We reverse, in part, the trial court's judgment with respect to materials delivered on or after June 1, 1990 and render judgment in favor of S.A. Maxwell. We remand the cause to the trial court for a determination of S.A. Maxwell's attorney's fees. We affirm the trial court's judgment in all other respects.

## FACTUAL BACKGROUND

R.C. Small was the general contractor hired by the Richardson Independent School District to perform certain additions and renovations to four elementary schools. R.C. Small agreed to furnish all labor and materials in connection with the school projects. In accordance with article 5160 of the Texas Revised Civil Statutes (the McGregor Act),[1]

---

1. The legislature repealed article 5160 effective September 1, 1993, and adopted titles 5, 6, and

R.C. Small obtained a payment bond in connection with the entire project.[2] Great American issued the bond and acted as surety. The payment bond ensured recovery for any claimant who furnished labor or materials on the project and who was not paid in full.[3]

R.C. Small subcontracted a portion of its contract to Glen Barrett Paint and Drywall (Barrett).[4] Barrett was responsible for furnishing labor and materials necessary to perform certain drywall work in connection with the school projects.

Barrett purchased vinyl wallcovering and cork underlayment (wallcovering materials) from S.A. Maxwell for completion of its subcontract work on the school projects. S.A. Maxwell shipped the wallcovering materials from its manufacturing facility in Chicago to its Dallas warehouse on May 27, 1990. Barrett began picking up the wallcovering material from S.A. Maxwell's warehouse and transporting it to the school properties on May 31. Barrett continued picking up materials in June, completely removing all of the wallcovering materials from S.A. Maxwell's warehouse on or before June 4.

S.A. Maxwell invoiced Barrett for the materials in two separate invoices, one in the amount of $15,313.51 and the other in the amount of $51,600.00, for a total of $66,913.51. Barrett failed to pay S.A. Maxwell for $52,071.35 of the amount due on these invoices.

Pursuant to the McGregor Act, S.A. Maxwell sent its first notice of nonpayment to R.C. Small on July 26, 1990, notifying R.C. Small that it had not received payment for the materials delivered to Barrett for the school projects.[5] S.A. Maxwell received no payment following its first notice. On August 15, S.A. Maxwell sent its second notice to R.C. Small and Great American. This notice informed R.C. Small and Great American that S.A. Maxwell had not received full payment for the wallcovering materials furnished to Barrett and that S.A. Maxwell's claim against the payment bond was $52,071.35. S.A. Maxwell did not receive any payment following its second notice.

On February 27, 1991, S.A. Maxwell brought suit against R.C. Small and Great American for recovery on the payment bond.[6] R.C. Small and Great American filed a motion for summary judgment contending that S.A. Maxwell's claim on the payment bond was barred because S.A. Maxwell's notices failed to comply with the McGregor Act's notice requirements. S.A. Maxwell filed a cross-motion for summary judgment contending that its notices were both timely and substantively sufficient under the McGregor Act. Both parties requested attorney's fees. The trial court granted R.C. Small and Great American's motion for summary judgment, but denied them attorney's fees. The trial court denied S.A. Maxwell's motion for summary judgment.

10 of the Texas Government Code. *See* Act of May 22, 1993, 73rd Leg., R.S., ch. 268, §§ 1, 46(1), 1993 Tex.Gen.Laws 986. The statutory provisions governing public work performance and payment bonds are recodified in title 10 of the Texas Government Code. *See* Tex.Gov't Code Ann. § 2253, et seq. (Vernon Pamph.1994). The events in this case, however, are governed by the 1989 amendatory act of former article 5160. *See* Act of June 16, 1989, 71st Leg., R.S., ch. 1138, § 38, 1989 Tex.Gen.Laws 4704, *repealed by* Act of May 22, 1993, 73rd Leg., R.S., ch. 268, § 46(1), 1993 Tex.Gen.Laws 986, *amended by* Act of June 18, 1993, 73rd Leg., R.S., ch. 865, § 1, 1993 Tex.Gen.Laws 3419 (current version at Tex. Gov't Code Ann. § 2253, et seq. (Vernon Pamph. 1994)). For purposes of clarity, we will reference and cite to former article 5160, as amended in 1989, and its respective subsections throughout this opinion.

**2.** Art. 5160(A).

**3.** Art. 5160(A)(b).

**4.** Glen Barrett Paint and Drywall, a defendant in the original suit, was dismissed from the suit because of a discharge in bankruptcy and is not a party to this appeal.

**5.** As a prerequisite to filing suit on a McGregor Act payment bond, claimants who do not have a direct contractual relationship with the prime contractor, such as S.A. Maxwell, must timely submit two written notices of nonpayment. *See* Art. 5160(B).

**6.** Additional causes of action were brought by S.A. Maxwell. However, the only issues presented on appeal concern the McGregor Act cause of action. Under the McGregor Act, a claimant may sue the principal and surety on the payment bond jointly or severally for the balance due. Art. 5160(B).

## SUMMARY JUDGMENT

■ A trial court may render summary judgment only if the pleadings, depositions, admissions, and affidavits show that no genuine issue exists regarding any material fact and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). Under rule 166a, both plaintiff and defendant may simultaneously move for summary judgment. TEX.R.CIV.P. 166a. Each party must carry its own burden, and neither can prevail due to the other's failure to discharge its burden. *See Cove Inv., Inc. v. Manges*, 602 S.W.2d 512, 514 (Tex.1980).

■ When the trial court's order granting summary judgment for one movant and denying summary judgment for the other does not specify the grounds upon which it rests, this Court may affirm the trial court's judgment if any of the grounds raised in the prevailing movant's motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). This Court may also reverse the trial court's judgment and render judgment for the other movant based on any meritorious grounds raised in its motion. *See id.; Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

■ On appeal, this Court considers all evidence accompanying both motions in determining whether to grant either party's motion. *Edinburg Consol. Indep. Sch. Dist. v. St. Paul Ins. Co.*, 783 S.W.2d 610, 612 (Tex.App.—Corpus Christi 1989, writ denied). In reviewing the summary judgment evidence, we apply the following standards:

1. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true; and

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

The facts in this case are not in dispute. This case involves pure questions of law: Whether S.A. Maxwell's notices of nonpayment complied with the timeliness and substantive requirements of the McGregor Act. Accordingly, this is a proper case for a summary judgment. *See Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 563 (1962).

## TIMELINESS OF NOTICES

■ In S.A. Maxwell's first point of error, it contends that its first notice of nonpayment, dated July 26, 1990, was timely under the McGregor Act. S.A. Maxwell argues that its first notice was not due until on or before August 15. R.C. Small and Great American contend that S.A. Maxwell's July 26 notice was untimely because it was due no later than July 15.

■ Under the McGregor Act, S.A. Maxwell must have sent its first notice to R.C. Small on or before the fifteenth day of the second month following the month in which the material was delivered. *See* Art. 5160(B)(b)(2); *see also Buckner v. Anderson–Dunham, Inc.*, 482 S.W.2d 350, 352 (Tex.Civ.App.—Eastland 1972, writ ref'd n.r.e.). S.A. Maxwell must have sent its second notice to both R.C. Small and Great American on or before the fifteenth day of the third month following the month in which the material was delivered. *See* Art. 5160(B)(a). Failure to comply with these notice requirements will bar a claim on the payment bond. *See Bunch Elec. Co. v. Tex–Craft Builders, Inc.*, 480 S.W.2d 42, 46 (Tex. Civ.App.—Tyler 1972, no writ).

S.A. Maxwell mailed its first notice letter to R.C. Small on July 26 and its second notice letter to R.C. Small and Great American on August 15. Only the timeliness of S.A. Maxwell's first notice, dated July 26, is in dispute.

■ The notice limitations period begins to run on the date materials are delivered. *See* Art. 5160(B). Therefore, in order to determine if S.A. Maxwell's July 26 notice was timely, we must determine when delivery of the wallcovering materials occurred. R.C. Small and Great American argue that delivery of all the materials occurred in May

because, under section 2–401 of the Uniform Commercial Code, title passed from S.A. Maxwell to Barrett upon arrival of the materials at S.A. Maxwell's warehouse. S.A. Maxwell argues that delivery means actual physical delivery of the materials and that this occurred when Barrett physically removed the materials from its warehouse.

 R.C. Small and Great American's argument is that delivery occurs whenever the seller has done everything necessary to be done under the contract. They argue that S.A. Maxwell completed its performance in connection with the purchase order transaction with Barrett when the materials arrived at its warehouse. This Court, however, has held that delivery according to the law of sales to be inapplicable in determining the delivery date of materials under the McGregor Act. *See Pacific Indem. Co. v. Bowles & Edens Supply Co.*, 290 S.W.2d 353, 358 (Tex. Civ.App.—Dallas 1956, writ ref'd n.r.e.). In *Pacific Indemnity*, we concluded that the true date of delivery must be controlling and not a technical legal delivery date. *Id.*

S.A. Maxwell argues that we should rely on the Miller Act[7] and conclude that when materials are subject to one order and delivery occurs over a period of several days, the delivery date for such materials is the last date on which the materials were delivered. The construction of the Miller Act is often applicable in construing similar provisions of the McGregor Act. *See Johnson Serv. Co. v. Climate Control Contractors, Inc.*, 478 S.W.2d 643, 646 (Tex.Civ.App.—Austin 1972, no writ). In this instance, however, the two acts are distinctly dissimilar. For purposes of calculating the notice limitations period under the Miller Act, the delivery date for materials delivered over a period of several days is the date the last of the materials are supplied. *See* 40 U.S.C.A. § 270b (1986). Section 270b(a) of the act specifically provides that a claimant must give notice "within ninety days from the date on which such person ... *supplied the last of the material for which such claim is made* ...." 40 U.S.C.A. 270b(a) (1986) (emphasis added). The McGregor Act makes no reference regarding the last delivery date of the materi-

als as determinative in calculating the notice limitations period. The McGregor Act notice provision states that the notice limitations period begins in "each month in which the labor was done or performed, in whole or in part, or material was delivered, in whole or in part." Art. 5160(B)(b)(2). Therefore, the Miller Act is not instructive in calculating the notice limitations period in the instant case.

In determining an actual delivery date we must look to the facts of the delivery. *National Sur. Co. v. United Brick & Tile Co.*, 71 S.W.2d 937 (Tex.Civ.App.—Amarillo 1934, writ dism'd), illustrates a similar fact situation to the one presented in this case. In *National Surety*, the general contractor entered into a contract with the city for the paving of city streets. The general contractor bought paving bricks for use in the performance of its contract. The supplier delivered the bricks to the general contractor between June 22 and June 26, 1931, and on July 3, 1931, which was the last delivery. When the general contractor did not make payment for the materials, the supplier filed its claim against the general contractor's payment bond.

At the time the events in *National Surety* occurred, the McGregor Act required claimants to file itemized and verified claims with the county clerk of the county in which the work was prosecuted within ninety days *from the date of the delivery of the material. See* Act of March 19, 1929, 41st Leg., R.S., ch. 226, 1929 Tex.Gen.Laws 481, *amended by* Act of April 27, 1959, 56th Leg., R.S., ch. 93, § 1, 1959 Tex.Gen.Laws 155, *amended by* Act of June 16, 1989, 71st Leg., R.S., ch. 1138, § 38, 1989 Tex.Gen.Laws 4704, *repealed by* Act of May 22, 1993, 73rd Leg., R.S., ch. 268, § 46(1), 1993 Tex.Gen.Laws 986. The supplier filed its itemized claim with the county clerk· on September 28, 1931. The surety argued that because the supplier filed its claim more than ninety days after the delivery of all the materials except the last, the supplier could recover only for the materials delivered to the general contractor in the last delivery. The court agreed and held that the supplier should recover against the payment

---

7. 40 U.S.C.A. § 270a, et seq. (1986).

bond for the materials delivered on July 3 that were used in the paving project. *National Sur.*, 71 S.W.2d at 942. The court stated:

> We believe the requirement of article 5160 that verified itemized statement of materials furnished should be filed within ninety days after such materials have been delivered, even though such materials necessary to complete the work are to be delivered in installments, is mandatory and conclusive.... [T]he surety should not be held liable except for material delivered within ninety days before the filing of the itemized account.

*Id.* at 941.

The Texas Supreme Court quoted this language from *National Surety* with approval in *Aetna Casualty & Sur. Co. v. Hawn Lumber Co.*, 128 Tex. 296, 97 S.W.2d 460, 463 (1936). In *Aetna Casualty*, the supreme court stated that "[t]he plain language of the statute with reference to materials is that the claim must be filed within 30 days 'from the date of the delivery of said materials.'[8] This must be held to be the *actual physical delivery* of the various items or consignments of material...." *Aetna Casualty*, 97 S.W.2d at 463 (emphasis added).

In 1959, the McGregor Act was rewritten to provide that the notice limitations period begins in "each month in which the labor was done or performed, in whole or in part, or material was delivered, in whole or in part." *See* Act of April 27, 1959, 56th Leg., R.S., ch. 93, 1959 Tex.Gen.Laws 155, *amended by* Act of June 16, 1989, 71st Leg., R.S., ch. 1138, § 38, 1989 Tex.Gen.Laws 4704, *repealed by* Act of May 22, 1993, 73rd Leg., R.S., ch. 268, § 46(1), 1993 Tex.Gen.Laws 986. Although the statute was again amended in 1989, this language defining when the notice limitations period begins remained unchanged. *See* Art. 5160(B). Beginning the notice limitations period in each month in which even a partial

delivery occurs shows a legislative intent to continue the case law interpretation that the *actual physical delivery* is controlling in determining the notice limitations period. *See National Sur.*, 71 S.W.2d at 942; *see also Aetna Casualty*, 97 S.W.2d at 463; *Pacific Indem.*, 290 S.W.2d at 358. We conclude that under the language of the McGregor Act, delivery means the actual physical delivery of materials.

Under the facts of this case, deliveries occurred in both May and June when Barrett physically removed the wallcovering materials from S.A. Maxwell's warehouse. The statutory language is clear that the notice period begins to run from *each month* in which a delivery or deliveries occur. Art. 5160(B)(b)(2). Therefore, the notice limitations period is different as to each month's deliveries.

Barrett testified in his deposition that he removed only four rolls of cork from S.A. Maxwell's warehouse in May. He testified that he picked up all the remaining materials in June. Barrett's testimony is not contradicted. Applying the provisions of article 5160(B)(b)(2), S.A. Maxwell must have sent its first notice by July 15 for the four rolls of cork materials picked up in May. *See* Art. 5160(B)(b)(2). For the remaining materials picked up in June, S.A. Maxwell must have sent its first notice by August 15. *See id.*

S.A. Maxwell sent its first notice for all the wallcovering materials on July 26. We conclude that S.A. Maxwell's July 26 notice was timely as to the materials picked up by Barrett in June, but untimely as to the materials picked up in May. We sustain S.A. Maxwell's first point of error to the extent deliveries occurred in June. We overrule its first point of error as to the materials delivered in May.

## SUFFICIENCY OF NOTICES

In its second point of error, S.A. Maxwell contends that both of its notices substantially

---

8. At the time the events in *Aetna Casualty* occurred, article 5160 provided that an itemized claim must be filed with the county clerk within thirty days from the date of the delivery of the materials. *See* Act of June 7, 1927, 40th Leg., 1st C.S., ch. 39, 1927 Tex.Gen.Laws 114, *amended by* Act of March 19, 1929, 41st Leg., R.S., ch. 226, § 1, 1929 Tex.Gen.Laws 481, *amended by* Act of April 27, 1959, 56th Leg., R.S., ch. 93, § 1, 1959 Tex.Gen.Laws 155, *amended by* Act of June 16, 1989, 71st Leg., R.S., ch. 1138, § 38, 1989 Tex.Gen.Laws 4704, *repealed by* Act of May 22, 1993, 73rd Leg., R.S., ch. 268, § 46(1), 1993 Tex.Gen.Laws 986; *see also Aetna Casualty*, 97 S.W.2d at 461.

complied with the substantive requirements of the McGregor Act. R.C. Small and Great American contend that neither of S.A. Maxwell's notices substantially complied with the "essential requirements" of the McGregor Act.

■■■ The notice requirements of the McGregor Act are to be liberally construed. *Sims v. William S. Baker, Inc.*, 568 S.W.2d 725, 730 (Tex.Civ.App.—Texarkana 1978, no writ). The McGregor Act's notice provisions require only substantial compliance. *Id.; Featherlite Bldg. Products Corp. v. Constructors Unlimited, Inc.*, 714 S.W.2d 68, 69 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

## A. First Notice

Article 5160(B)(b)(2) of the McGregor Act provides that the first claim notice must state that payment on the claim has not been received. It further provides that a copy of the statement sent to the subcontractor shall suffice as such notice. Art. 5160(B)(b)(2).

■■■ R.C. Small and Great American argue that this subsection must be read to require a claimant to provide the general contractor with enough information to identify the project and subcontractor against which the claim is being made and the amount of the claim. They argue that S.A. Maxwell's first notice was too general because it referenced a lump sum amount due and referred to all four of the Barrett contracts in general without identifying any particular amount due on any individual contract. R.C. Small and Great American argue that it was incumbent on S.A. Maxwell to identify, with some specificity, its claims against Barrett for each of the four school projects. We disagree.

Requiring a claimant to provide more information in its notices to a general contractor than required by the McGregor Act would severely undermine the remedial purposes of the statute. With regard to the first notice, the McGregor Act provides that a copy of the statement sent to the subcontractor will suffice as notice. Art. 5160(B)(b)(2). S.A. Maxwell complied with this requirement by attaching to its July 26 notice copies of both invoices it sent to Barrett.

Additionally, S.A. Maxwell's notice stated that it pertained to the "additions and renovations to four existing schools in the Richardson Independent School District." It specifically identified each of the four schools and the payment bond number. The notice further stated that R.C. Small was the general contractor and that Barrett was a subcontractor on the four school projects. The notice listed the full amount remaining unpaid and past due from the sale of the materials to Barrett. S.A. Maxwell's first notice letter, together with the attached invoices, sufficiently identified the projects, the parties involved, and a sum certain that remained past due and unpaid. We conclude that S.A. Maxwell's first notice was more than sufficient to satisfy the requirements of the McGregor Act. *See* Art. 5160(B)(b)(2).

## B. Second Notice

The information required in the second notice depends upon the type of claim at issue. These notice requirements are set forth in Article 5160(B)(a), subsections 1 and 2, of the McGregor Act. Subsection 1 outlines the substantive notice requirements in instances where no written contract exists between the claimant and a prime contractor or subcontractor. *See* Art. 5160(B)(a)(1). Subsection 2 relates specifically to the content of the notices when the claim is for multiple items of material which is to be paid for on a lump-sum basis. *See* Art. 5160(B)(a)(2). No written contract existed between S.A. Maxwell and R.C. Small or Barrett. S.A. Maxwell's claim is on an open account whereby Barrett orally placed its orders with S.A. Maxwell and S.A. Maxwell invoiced Barrett on a per-order basis. Because Barrett paid on a per-order basis rather than in a lump sum, we conclude that the information required in S.A. Maxwell's second notice is that prescribed by article 5160(B)(a)(1).

The McGregor Act requires that a sworn statement of account accompany the second notice stating in substance that the amount claimed is just and correct and that all just and lawful offsets, payments, and credits

known to the affiant have been allowed. Art. 5160(B)(a). With regard to materials, article 5160(B)(a)(1) further provides that the notice (1) state the name of the party for whom the material was delivered, (2) state the approximate date or dates of delivery, and (3) describe the materials in such a manner as to reasonably identify it and the amount due on such materials. Art. 5160(B)(a)(1). Additionally, the claimant must generally itemize its claim and accompany same with true copies of documents, invoices, or orders sufficient to reasonably identify the material delivered. *Id.* The documents must contain a reasonable identification of the job and destination of delivery. *Id.*

■ R.C. Small and Great American argue that S.A. Maxwell's second notice fails to comply with article 5160(B)(a)(1) in that it does not contain a reasonable identification or description of the job and destination of delivery. They further argue that S.A. Maxwell's notice is insufficient because it does not state the approximate date or dates of delivery of the material.

■ In determining whether the notice reasonably identifies the information required by the McGregor Act, the test is not whether the description would reasonably identify such information to a stranger, but rather whether the description reasonably identifies the information to the prime contractor and surety. *Cf. Sims,* 568 S.W.2d at 730 (applying test to determine whether notice reasonably identified the labor performed and materials furnished).

S.A. Maxwell's second notice, dated August 15, provided the payment bond number and identified R.C. Small as principal on the bond and Barrett as the subcontractor. The notice further recited:

> Notice is hereby given pursuant to Article 5160B(a) that S.A. Maxwell Co. has furnished materials under an agreement with R.C. Small & Associates, Inc. and Glen Barrett Company for the addition and renovation of existing schools in the Richardson Independent School District. To date, the amount due and unpaid for such materials is $52,071.35, after allowing for all lawful offsets, payments, and credits,

which amount is now claimed by this Notice.

Attached to this notice was a sworn statement of account, true copies of Barrett's applications to R.C. Small for payment, and true copies of the two invoices sent by S.A. Maxwell to Barrett for the materials at a value of $66,913.51. The payment applications were dated May 25, 1990. The invoices were dated May 27, 1990 and reflected that the materials were shipped on that date.

Additionally, Michael Clayton (Clayton), R.C. Small's controller, testified in his deposition that the August 15 notice contained sufficient information to inform him of the project involved, that being the four elementary schools in the Richardson Independent School District. He testified that R.C. Small had only the one contract with the Richardson ISD. He further stated that the notice contained Barrett's name, the party for whom S.A. Maxwell supplied the materials. Clayton testified that the notice contained the amount of the contract with Barrett of $66,913.51 and the amount claimed by S.A. Maxwell of $52,071.35. He further testified that the documents attached to the August 15 notice stated the approximate date of delivery of the materials as May and that the notice contained sufficient information to allow him to know where the materials were going.

Robert Small (Small) testified in his deposition that it was customary for R.C. Small to refer to the project generally as "four Richardson independent schools" and that if he saw such a reference he would know to which schools it referred. He also testified that the language "four existing elementary schools" in the August 15 notice was sufficient to inform him of the project the notice was referencing. Small testified that the notice stated the name of the party for whom the materials were delivered, Barrett, and that it stated the amount of the contract with Barrett and the amount of S.A. Maxwell's claim. He stated that the notice and the attached documents contained sufficient information to allow him to (1) know the approximate delivery dates of the materials, (2) determine that the materials referenced were wallcovering material and cork, and (3) know that the

materials were going to each of the four Richardson schools. Small further stated that the notice showed that S.A. Maxwell expected payment for the materials as of the date of the notice and that it was reasonable to assume that S.A. Maxwell had not received payment as of the date of the notice.

We conclude that S.A. Maxwell's second notice was sufficient to put R.C. Small and Great American on notice of the materials furnished to Barrett, the project for which they were furnished, the destination of delivery, and the approximate date of delivery of the materials. *Cf. Sims*, 568 S.W.2d at 730. The testimony of Clayton and Small provides additional support for our conclusion. We further conclude that S.A. Maxwell's second notice substantially complied with the requirements of the McGregor Act. *Id.* Because both S.A. Maxwell's first and second notice substantially complied with the McGregor Act, we sustain S.A. Maxwell's second point of error.

## ATTORNEY'S FEES

■ In their cross-point of error, R.C. Small and Great American contend that the trial court abused its discretion by not awarding them attorney's fees. They argue that they are entitled to attorney's fees as the prevailing party in an action under the McGregor Act. *See* Art. 5160(H).

■ Article 5160(H) of the McGregor Act provides that "[i]n any proceeding to enforce a claim against a payment bond or in any proceeding to declare that any claim is invalid, in whole or in part, the court *may* award costs and reasonable attorney's fees *as equitable and just*." Art. 5160(H) (emphasis added). Under the statute's plain language, the decision of whether to grant or deny costs or attorney's fees in a McGregor Act cause of action is within the trial court's sound discretion. We will not reverse the trial court's decision unless the complaining party shows a clear abuse of discretion. *Trinity Universal Ins. Co. v. Fidelity & Casualty Co.*, 837 S.W.2d 202, 205 (Tex.App.—Dallas 1992, no writ).

■ Article 5160(H) does not mandate an award of attorney's fees to the prevailing party. In fact, neither party in a McGregor Act proceeding is entitled to an award as a matter of right. Article 5160(H) simply provides that the trial court *may* award attorney's fees as are *equitable and just.*

R.C. Small and Great American fail to demonstrate that the trial court abused its discretion by not awarding them attorney's fees, and no abuse is shown from the record. R.C. Small and Great American cite no authority for their assertion that the trial court's failure to award them attorney's fees constitutes error. We overrule R.C. Small and Great American's cross-point of error.

■ S.A. Maxwell argues that it is entitled to, and asks us to render judgment for, costs of court, pre-judgment and post-judgment interest, and attorney's fees in the amount of $37,500, the uncontroverted amount of the reasonable attorney's fees incurred by S.A. Maxwell through the filing of its cross-motion for summary judgment. Further, S.A. Maxwell requests that we remand this cause to the trial court for a determination of additional attorney's fees incurred as a result of this appeal and attorney's fees it may incur if an appeal is pursued to the Texas Supreme Court.

As previously stated, the decision regarding an award of costs and attorney's fees in a McGregor Act cause of action lies within the trial court's sound discretion. *See* Art. 5160(H). The amount of post-judgment interest cannot be calculated until a determination by the trial court on the issues of costs and attorney's fees. Further, we make no determination as to when the time for calculating pre-judgment interest begins under the facts of this case. We, therefore, remand this case to the trial court for a determination of the issues regarding S.A. Maxwell's costs, attorney's fees, pre-judgment, and post-judgment interest.

## CONCLUSION

The summary judgment evidence conclusively establishes every element of S.A. Maxwell's claim to the extent of material delivered on or after June 1, 1990. S.A. Maxwell timely sent its first and second notices with regard to the June deliveries and both no-

tices met the substantive requirements of the McGregor Act. Therefore, the trial court erred in granting summary judgment in favor of R.C. Small and Great American to the extent of deliveries made in June. Because S.A. Maxwell's first notice was untimely as to the materials delivered in May, the trial court did not err in granting summary judgment in favor of R.C. Small and Great American for deliveries made in May.

The parties agree that $52,071.35 remains due and owing S.A. Maxwell for all of the materials delivered to Barrett. Because S.A. Maxwell did not submit a timely notice as to the materials delivered in May, S.A. Maxwell may not recover for the value of these materials. The undisputed evidence establishes that four rolls of cork were delivered to Barrett in May. All the remaining materials were delivered during the month of June. S.A. Maxwell's invoices reflect that $300 is the net unit price for each roll of cork. Therefore, S.A. Maxwell's recovery must be reduced by $1200. We conclude that S.A. Maxwell is entitled to recovery against R.C. Small and Great American in the amount of $50,871.35, the amount due and owing S.A. Maxwell for the materials delivered to Barrett in June.

We reverse the trial court's judgment in favor of R.C. Small and Great American as to the June deliveries and render judgment in favor of S.A. Maxwell in the amount of $50,-871.35. We remand the case to the trial court for a determination of S.A. Maxwell's costs and attorney's fees. We affirm the trial court's judgment in all other respects.