REVISED JUNE 3, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 23, 2008

Charles R. Fulbruge III
Clerk

No. 07-20483

In The Matter Of:  CONTRACTOR TECHNOLOGY, LTD

Debtor

--------------------------------------------------------------------------------

ST. PAUL TRAVELERS INSURANCE COMPANY

Appellee

v.

CENTURY ASPHALT MATERIALS, LLC

Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Century Asphalt Materials, LLC, sold construction materials to Contractor Technology, Ltd., a general contractor for the State of Texas. Contractor Technology paid Century but before the checks cleared, the contractor filed for bankruptcy. The bankruptcy court held that Contractor Technology's payments to Century were unauthorized post-petition transfers and ordered that Century

return the payments to the Trustee. On summary judgment, the court, after "returning" the parties to the positions they were in when the checks were delivered, held that Century had with this reset of time perfected its bond claims for the materials. Century had sent the claims to St. Paul Travelers Insurance Company, Contractor Technology's surety, after it had returned the payments to the Trustee. St. Paul appealed to the district court, which reversed. Century appealed.

I

In March 2005, Century delivered materials to Contractor Technology, a contractor involved in various public works improvement projects for the State of Texas. Contractor Technology had retained St. Paul as a surety to provide payment bonds for its suppliers. As payment for the materials, Contractor Technology issued its first check for $33,454.75 to Century on April 30, 2005, and its second check for $84,104.64 on May 10, 2005. These checks cleared on May 16 and 19, 2005, but not before Contractor Technology filed for bankruptcy on May 13, 2005. Contractor Technology's Chapter 7 Trustee filed an adversary proceeding against Century on November 8, 2005, urging that the checks were unauthorized post-petition transfers.[1] Realizing that under the bankruptcy proceeding it might have to relinquish the payments that it had received from Contractor Technologies, on December 8, 2005, Century filed a third-party complaint against St. Paul in bankruptcy court. On July 17, 2006, the bankruptcy court avoided and rescinded Contractor Technology's transfers to Century, as Century had feared it would do. The Trustee and Century disputed the actual amount due and settled at $115,000. On August 15, 2006, the bankruptcy court issued an Order Approving Compromise and Settlement

---

[1] See 11 U.S.C. § 549.

requiring Century to pay $84,104.64 and $30,895.36 to the Trustee within ten days of the order. The order stated,

> On the date that the First Settlement Payment is delivered to the Trustee (the "First Repayment Date"), the parties are returned to their respective positions as they existed on May 10, 2005 with respect to the obligations owed by the Debtor to Century Asphalt that were originally satisfied. . . . Any and all applicable deadlines existing on May 10, 2005 with respect to the claim satisfied by the delivery of . . . [the first check] shall continue to run from the First Repayment Date.

The order contained identical language for the second check, replacing "First Repayment Date" with "Second Repayment Date" and "May 10, 2005" with April 30, 2005." Having returned the payments it originally received, Century then attempted to obtain payment for the materials by making a bond claim. On August 28, 2006, Century sent notice and a sworn statement of account to St. Paul pursuant to the procedures required for bond claims under Texas Government Code Chapter 2253, also known as the McGregor Act.[2]

St. Paul filed a motion for summary judgment with the bankruptcy court, arguing, inter alia, that Century had failed to meet the Act's notice requirements with respect to timing. Section 2253.041 of the Act, "Notice Required for Claim for Payment for Labor or Material," provides in relevant part,

> (a) To recover in a suit under Section 2253.073 on a payment bond for a claim for payment for public work labor performed or public work material delivered, a payment bond beneficiary must mail to the prime contractor and the surety written notice of the claim.

> (b) The notice must be mailed on or before the 15th day of the third month after each month in which any of the claimed labor was performed or any of the claimed material was delivered.

---

[2] See, e.g., Suretec Ins. Co. v. Myrex Indus., 232 S.W.3d 811, 813 (Tex. App.–Beaumont 2007, pet. filed) (describing Chapter 2253 of the Texas Government Code as "the McGregor Act").

(c) The notice must be accompanied by a sworn statement of account that states in substance:

(1) the amount claimed is just and correct; and

(2) all just and lawful offsets, payments, and credits known to the affiant have been allowed.[3]

St. Paul maintained that because Century delivered the materials in March 2005, under the Act it was required to provide notice of a bond claim on or before June 15, 2005, the fifteenth day of the third month after the materials were delivered, and that it failed to meet this deadline. St. Paul further argued that Century had failed to meet several of the Act's substantive notice requirements,[4] and that Century could not claim the broad protections contained within the Act for material suppliers to state contractors, as it was requesting funds that had been transferred in bankruptcy, not reimbursement for defaulted materials payments. Finally, it asserted that the bond claim failed because "Century Asphalt has already been paid and therefore, it cannot satisfy the Texas Government Code for recovery on a bond claim." In other words, it urged that bond claims under the McGregor Act are for defaulted payments, not payments made and later rescinded in bankruptcy.

Century filed a cross motion for summary judgment, asserting that it had met all of the Act's substantive requirements. Its central argument was that the bankruptcy court's avoidance of the payments brought the parties back to their original positions, making Century an unpaid supplier subject to the Act's broad protections. Century maintained that its bond notice of August 28, 2006, was

---

[3] Tex. Gov't Code § 2253.041.

[4] It urged that "Century Asphalt failed to provide notice, a sworn statement of account and failed to satisfy all of the requirements to properly perfect its bond claim in anyway [sic] under the Texas Government Code. It also failed to identify the specific payment bond and project for which it is seeking recovery."

4

timely because the bankruptcy court's order provided that applicable deadlines for claims originally satisfied by delivery of the checks would run from the dates on which Century had to return the money to the Trustee – the repayment dates. In other words, pursuant to the court's order the repayment dates became the dates when Contractor Technology "defaulted" on its payments to Century. Because Century "furnished the bond notice within three days of the repayment date," Century argued, it furnished bond notice well within Chapter 2253's three-month window. Century also argued that Texas courts have held that Chapter 2253 should be liberally construed, that the Act only requires "substantial compliance," and that the Texas legislature intended for the Act to protect material suppliers like Century. In a footnote, Century urged the court to apply equitable tolling because "Chapter 2253's limitations would effectively bar Century Asphalt, through no fault of its own, from seeking to recover on the payment bonds . . . ."

The bankruptcy court denied St. Paul's motion for summary judgment and granted Century's cross motion. Its holding rested on two central points of reasoning. First, the court held that "in determining a bond beneficiary's compliance with the notice requirements of Chapter 2253, 'substantial compliance' is considered all that is necessary to properly perfect a claim." The court determined that because it avoided now-bankrupt Contractor Technology's payments to Century for materials, Contractor Technology's payments were payments that "never occurred." Therefore, the "repayment dates" – the dates on which the court ordered Century to return the payments to the trustee – became the dates on which Contractor Technology failed to pay Century for its materials. Under the bankruptcy court's reasoning, Century need only have provided notice of a bond claim to St. Paul on the fifteenth day of the third month after Century returned the funds to the Trustee. The bankruptcy court concluded that it would "consider Century as never having been paid for its

public work material provided" and that, as a result, "Century falls within the bounds of requesting payment from the surety as provided" by Chapter 2253.

The bankruptcy court's second line of reasoning rested on equitable tolling. It observed that

> the present case may . . . be differentiated [from traditional equitable tolling] in that equitable tolling . . . deals with the tolling of statutes of limitation. The notice requirement under the McGregor Act is not a statute of limitation. It is a statutorily defined condition precedent to filing a bond claim.

The bankruptcy court held that although Chapter 2253's notice requirement is not a statute of limitation, it could apply equitable tolling to further the McGregor Act's purpose of protecting entities that provide materials and labor to Texas public works projects. It also concluded that equitable tolling was applicable because "[t]he present case certainly falls within the category of 'extraordinary circumstances' making it impossible for plaintiff to timely assert his claim."

St. Paul appealed, and the district court reversed, remanding to the bankruptcy court for entry of summary judgment in St. Paul's favor.[5] The district court held that

> [e]ven if the effect of Century Asphalt's settlement with the Trustee was to return Century Asphalt to the position it would have held in May 2005 if the Debtor (Contractor Technology) had not paid for the material Century Asphalt provided, Century Asphalt would still be required under § 2253.041 to provide written notice "on or before the 15th day of the third month after . . . any of the claimed material was delivered." The parties have not cited and this Court has not located any legal authority that enables an avoidance under the

---

[5] Because the court reversed and remanded with a specific order to enter summary judgment in favor of St. Paul – a ministerial task – we have jurisdiction. See In re Caddo Parish-Villas S., Ltd., 174 F.3d 624, 628 (5th Cir. 1999).

Bankruptcy Code of a transfer to excuse compliance with state statutory prerequisites such as the § 2253.041 notice requirement.[6]

The district court also held that equitable tolling did not permit the bankruptcy court to extend the notice deadline for the bond claim, as the notice requirement is not a statute of limitations, and equitable tolling applies only "'to the affirmative defense of limitations.'"[7] Furthermore, the court held, even if it could apply the doctrine, it could not apply it to the extent that it overruled legislative choices, and Century Asphalt failed to act diligently in providing notice. Century knew no later than November 2005, when it received notice of the adversary bankruptcy proceeding, that the payments were likely to be avoided.

Century appeals from the district court's order, urging that because Chapter 2253 is remedial and aims to protect material suppliers like Century, the district court should have liberally construed the statute. The avoided transfer brought the parties back to their position prior to receiving the payments, it urges, and because Century provided notice of its bond claim three days after the due date for repayments ordered by the court, it essentially provided notice on May 13, 2005 – three days after the first materials were delivered and "well before the June 15, 2005 notice date." Furthermore, Century argues, the district court's strict construction of the statute results in "absolute protection for the surety," contrary to the statute's purpose of protecting suppliers of material and labor, and leads to absurd results. "Under the district court's holding," it maintains, "the only way a supplier could protect its statutory rights under Chapter 2253 would be to furnish bond notices on every single

---

[6] In re St. Paul Fire and Marine Ins. Co. v. Century Asphalt Materials, LLC, No. 05-3808, 2007 WL 1468549 at *2 (S.D. Tex. May 18, 2007) (internal citation omitted).

[7] Id. at *3 (quoting Heart Hosp. IV, L.P. v. King, 116 S.W.3d 831, 836 (Tex. App.–Austin 2003, rhr'g overruled, rev. denied)).

project, every single time it furnished material, regardless of whether it had already been paid for the material . . . ." Finally, Century urges that the district court erred in holding that the doctrine of equitable tolling does not apply and improperly construed Chapter 2253's notice requirement as a jurisdictional prerequisite.

St. Paul disagrees, arguing that construing Chapter 2253 to permit late notice would write an exemption into the statute and that equitable tolling applies only to statutes of limitations. Its central argument lies in the timing. It maintains,

> It is undisputed that the materials for which Century Asphalt seeks recovery were delivered in March 2005. Given this undisputed fact, notice under Chapter 2253 of the Texas Government Code for such labor or materials was due by June 15, 2005. It is also undisputed that Century Asphalt did not provide notice of any payment bond claim by the date. . . . Therefore, Century Asphalt did not perfect a payment bond claim under the provisions of the Texas Government Code.

We first address the timing arguments and then equitable tolling.

## II

We review the district court's reversal of the bankruptcy court's grant of summary judgment de novo.[8] We are persuaded that no matter how liberally we construe Chapter 2253,[9] it does not contain a notice exemption for bond claims

---

[8] See In re Robertson, 203 F.3d 855, 858 (5th Cir. 2000).

[9] See, e.g., Redland Ins. Co. v. Sw. Stainless, L.P., 181 S.W.3d 509, 512 (Tex. App. – Fort Worth 2005, no pet.) (quoting Featherlite Bldg. Prods. Corp. v. Constructors Unlimited, Inc., 714 S.W.2d 68, 69 (Tex. App.–Houston 1986, writ ref'd n.r.e.)) ("Because the McGregor Act is remedial in nature, 'it is to be given the most comprehensive and liberal construction possible.'"); S.A. Maxwell Co. v. R.C. Small & Assoc., Inc., 873 S.W.2d 447, 454 (Tex. App.– Dallas 1994, writ denied) (holding that "[t]he notice requirements of the McGregor Act are to be liberally construed"); City of LaPorte v. Taylor, 836 S.W.2d 829, 832 (Tex. App. – Houston 1992, no writ) (holding that Chapter 2253's predecessor, Article 5160, is "highly remedial in nature and courts should construe it liberally to accomplish its purposes"); Baxter Constr. Co. v. Hou-Tex Prods., Inc., 718 S.W.2d 355, 358 (Tex. App.–Houston 1986, writ ref'd n.r.e.)

on payments that were avoided in bankruptcy. Even if the bankruptcy court's order had the effect of reverting the parties to their original positions, as if Contractor Technologies had never paid Century, Chapter 2253's notice provisions are grounded in the date of delivery, not in the date of payment or failure to pay. Chapter 2253 requires that the notice "be mailed on or before the 15th day of the third month after each month in which any of the claimed labor was performed or any of the claimed material was delivered."[10] The Texas Court of Appeals has observed,

> In 1959, the McGregor Act was rewritten to provide that the notice limitations period begins in 'each month in which the labor was done or performed, in whole or in part, or material was delivered, in whole or in part.' Although the statute was again amended in 1989, this language defining when the notice limitations period begins remained unchanged. Beginning the notice limitations period in each month in which even a partial delivery occurs shows a legislative intent to continue the case law interpretation that the actual physical delivery is controlling in determining the notice limitations period.[11]

Century does not argue that the bankruptcy court's avoidance of the transfer reverted the parties to a position wherein the materials were somehow "undelivered." Century delivered the materials in March 2005, and it did not provide notice on the bond claim by June 15, 2005, as required by the terms of the statute. The bankruptcy court's avoidance of the payments does not change these facts.

---

(quoting United Benefit Fire Ins. Co. v. Metro. Plumbing Co., 363 S.W.2d 843, 847 (Tex.Civ.App.– El Paso 1963, no writ)) (holding that Article 5160 should be "'accorded the most comprehensive and liberal construction of which it is susceptible in order to accomplish the legislative purpose'"); Gen. Elec. Supply Co. v. Epco Constructors, Inc., 332 F. Supp. 112, 114 (S.D. Tex. 1971) (holding that Article 5160's "notice requirements . . . are to be liberally construed").

[10] Tex. Gov't Code § 2253.041(b) (emphasis added).

[11] S.A. Maxwell Co., 873 S.W.2d at 453 (internal citations omitted).

Nor are we convinced that the failure to read a notice exemption for avoided transfers into the Act defeats its purpose or leads to "absurd" results. The purpose of the Act and its provisions for notice of claims on payment bonds is to "protect claimants who provide labor or materials in the construction of public works,"[12] and also "'to provide a simple and direct method of giving notice and perfecting'" payment bond claims.[13]  Reading the Act by its terms does not by necessity frustrate these purposes or create an absurd construction.

In Waggoner v. Gonzales, we recognized that "the common mandate of statutory construction [is] to avoid absurd results."[14]  To avoid absurd results in that case, we interpreted the statute by looking to the language of the statute as a whole as well as the "plain language of the statute. . . and [its] . . . other analogous . . . exceptions."[15]  We held, "Although we may well conclude a different result is more appropriate, when a statute is clear on its face, we must faithfully interpret it."[16]  Reading Chapter 2253 by its unambiguous terms, which require suppliers to provide notice of a bond claim by the fifteenth day of the third month following delivery, does not lead to absurd results.  The statute says nothing of bankruptcy or of the protections afforded to material suppliers when contractors who have purchased supplies file for bankruptcy.  Reading an exemption into the notice requirement for bankruptcy would create substantial questions regarding the proper boundary of inquiry into third party liability for the avoided payments.

---

[12] Redland Ins. Co., 181 S.W.3d at 511.

[13] Id. (quoting Capitol Indem. Corp. v. Kirby Rest. Equip. & Chem. Supply Co., 170 S.W.3d 144, 147 (Tex. App.–San Antonio 2005, pet. filed)).

[14] 488 F.3d 632, 638 (5th Cir. 2007).

[15] Id.

[16] Id. at 636.

Finally, we are unconvinced that by sending a notice claim within three days after the date of repayment established by the bankruptcy court, approximately 17 months after its delivery of material, Century "substantially complied" with Chapter 2253's notice requirements. Parties have "substantially complied" with the notice requirements of the Act and the former versions of the Act where their notice used language that was not identical to that contained within the Act but conveyed the message of that language,[17] or where they sent timely and adequate notice by "first-class regular mail instead of certified mail."[18] But timing requirements are different. As the court in Wesco Distribution, Inc. v. Westport Group, Inc. held with respect to the materialmen's lien statute, which is also to be liberally construed to protect materialmen, "Liberal construction cannot read the timing requirements out of the statute."[19]

### III

Century argues that the district court erred in holding that equitable tolling does not apply to its bond claim. We review de novo the district court's interpretation of § 2253.041's timing provision as a "jurisdictional statutory prerequisite" rather than a statute of limitations.[20]

As the district court observed, the Texas Court of Civil Appeals held in Bunch Electric Co. v. Tex-Craft Builders, Inc. that a notice requirement for

---

[17] See, e.g., Featherlite Bldg. Prods. Corp., 714 S.W.2d at 69.

[18] See, e.g., Redland Ins. Co., 181 S.W.3d at 512.

[19] 150 S.W.3d 553, 557, 558 (Tex. App.–2004, no pet.); see also S.A. Maxwell Co., 873 S.W. 2d at 453-56 (sustaining a point of error for untimely notice with respect to a claim under Art. 5160, Chapter 2253's predecessor, but overruling other points of error where the supplier provided timely notice and substantially complied with other substantive requirements).

[20] Id. ("De novo review applies where a district court 'interprets a statute or regulation to prohibit tolling.'").

unpaid bills for materials and labor,[21] the now-repealed predecessor to Chapter 2253,[22] was "not a mere statute of limitation, but is a substantive condition precedent to the existence of the cause of action."[23] In an unreported opinion, the Texas Court of Appeals more recently affirmed that Chapter 2253's notice requirement "is not a mere statute of limitation, but is a substantive condition precedent to the existence of a cause of action on the surety bond."[24] Equitable tolling does not apply to a "jurisdictional statutory prerequisite,"[25] and the court did not err in so holding. Concededly, there are occasions where the bankruptcy court can override state law which frustrates its statutory mission. Here, however, the bonding company's duty to pay rested in state law. And the power of the bankruptcy court did not extend to creating liabilities existing neither in federal or state law.

---

[21] 480 S.W.2d 42, 45 (Tex. Civ. App. – Tyler 1972, no pet.) (quoting Tex. Rev. Civ. Stat. art. 5160). The requirement provided,

> Such claimant shall have given within ninety (90) days after the 10th day of the month next following each month in which the labor was done or performed, in whole or in part, or material was delivered, in whole or in part, for which such claim is made, written notices of the claim by certified or registered mail, addressed to the prime contractor at his last known business address, or at his residence, and to the surety or sureties.

[22] See S.A. Maxwell Co., 873 S.W.2d at 449 n.1 ("The legislature repealed article 5160 effective September 1, 1993, and adopted titles 5, 6, and 10 of the Texas Government Code. See Act of May 22, 1993, 73rd Leg., R.S., ch. 268, §§ 1, 46(1), 1993 Tex. Gen. Laws 986. The statutory provisions governing public work performance and payment bonds are recodified in title 10 of the Texas Government Code." (citing Tex. Gov't Code § 2253, et seq.))).

[23] Bunch Elec. Co., 480 S.W.3d at 45.

[24] Harvest Const. Team v. Hartford Fidelity & Bonding, No. 05-03-00006-CV, 2003 WL 23095668 at *2 n.1 (Tex. App.–Dallas Dec. 31, 2003, rev. denied, rhr'g of pet. denied) (citing Bunch, 480 S.W.3d at 45).

[25] See, e.g., Heart Hosp. IV, L.P. v. King, 116 S.W.3d 831, 836 (Tex. App.– Austin 2003, rhr'g overruled; rev. denied) (holding that " the case before us does not present a limitations issue, but rather a jurisdictional statutory prerequisite" and that equitable tolling did not apply).

The district court also held that even if equitable tolling somehow applied, Century did not act diligently in providing notice to St. Paul once Century learned that its payments would be avoided.  We need not address this holding, as we affirm the district court's holding that Chapter 2253's notice requirement is not a statute of limitations.

AFFIRMED.