COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-460-CV

 

 

C. GREEN SCAPING, L.P.                                            
APPELLANT AND

 CROSS-APPELLEE       

 

 

                                                   V.

 

WESTFIELD INSURANCE COMPANY                             APPELLEE
AND

 CROSS-APPELLANT    

 

 

                                              ------------

 

             FROM
THE 67TH DISTRICT COURT OF TARRANT
COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








Appellant and Cross-Appellee
C. Green Scaping, L.P. (ACGS@) sued Appellee and Cross-Appellant Westfield Insurance Company (AWestfield@) on a
payment bond issued by Westfield under section 2253 of the Texas Government
Code.  Following a bench trial, the trial
court entered judgment for CGS.  In two
issues, CGS challenges the sufficiency of the evidence supporting the trial
court=s finding that CGS was liable for liquidated damages in the amount of
$15,000 and argues that the trial court abused its discretion by not awarding
CGS attorney=s fees.  Westfield argues that the trial court erred
by failing to offset CGS=s award in
an amount equal to the trial court=s award to Greenscape Pump Services, Inc. (AGreescape Pump@), another
party involved in the lawsuit, and that the evidence is legally and factually
insufficient to show that CGS gave timely notice of one of its payment bond
claims.  We will affirm in part and
reverse and render in part.

II.  Factual and Procedural Background

SRO General Contracting, Inc.
(ASRO@) entered
into a public works contract with the City of Fort Worth (Athe City@) to
reconstruct a portion of Evans Avenue. 
SRO subcontracted part of the work to CGS, which was responsible for
everything Aback of the
curb@Cbricks, brick pavers, sidewalks, decorative concrete sidewalks,
columns, monuments, irrigation, landscaping, and a fountain.  CGS subcontracted the equipment, material,
and labor for the fixed architectural fountain equipment to Greescape Pump.








As required by the City=s and SRO=s contract
and section 2253 of the government code, SRO secured a payment bond issued by
Westfield in the amount of the contract. 
Payments to SRO=s
subcontractors were ultimately made through a disbursement control account
managed by AACON, Inc.

SRO began work on the project
after some initial delays.  Thirteen or
fourteen change orders were made to the project=s plans, and the City increased the number of days given SRO to
complete the project at least once. CGS experienced difficulty beginning work
on its portion of the construction after receiving notice to proceed in April
2003 because SRO had not completed part of its work, such as grading and
installing steel columns, but CGS eventually completed the work under its
contract with SRO.  Greenscape Pump also
completed its work under the subcontract with CGS.








CGS filed payment bond claims
with Westfield on July 14, 2003, October 14, 2003, December 12, 2003, March 10,
2004, and June 1, 2004, for unpaid amounts allegedly due for labor performed,
materials furnished, and retainage. CGS also filed a payment bond claim on September
28, 2004, after the City=s final
inspection in June 2004 but before the City Aclos[ed] out the project@ in August 2005.  When Westfield
ultimately withheld $87,424.31 of CGS=s claimed amounts, CGS sued Westfield, alleging damages in the amount
of $87,424.31, which represented approximately $48,138.68 for retainage,
$7,867.74 for work performed during July and August 2004, and approximately
$33,000 for work performed under line item twenty-three of the SROCCGS subcontract agreement.  CGS
also sued SRO and the City.

Greenscape Pump filed one or
more payment bond claims with Westfield for unpaid labor and materials,
too.  Westfield paid all but $5,561.25.
Greenscape Pump sued Westfield for this remaining balance and sought attorneys= fees.

CGS obtained a default
judgment against SRO in the amount of $87,424.31 and nonsuited its claims
against the City before trial, leaving Westfield as the sole defendant.  At trial in March 2006, witnesses testified
that the City assessed liquidated damages against SRO for delays in timely
completing the project.  Westfield
attempted to elicit testimony from Bill Hurst, an inspector for the City who
worked on the Evans Avenue project, about construction delays and liquidated
damages attributable to CGS, but the trial court sustained CGS=s objection to the testimony because Westfield did not assert delay or
liquidated damages as affirmative defenses to CGS=s payment bond claim.  The trial
court did, however, allow Westfield to make an offer of proof setting forth the
excluded evidence.








The trial court signed its
findings of fact and conclusions of law on May 29, 2006.  The trial court found in part that Westfield
was liable to Greenscape Pump in the amount of $5,561.25 plus attorneys= fees and that Westfield was liable to CGS in the amount of
$56,006.42, representing $48,138.68 for retainage and $7,867.74 for work
performed Ain the
summer of 2004.@  The trial court found that CGS was liable for
liquidated damages in the amount of $15,000.00, which reduced CGS=s award to $41,006.42, because CGS Adid not timely perform its work under the subcontract and the City of
Fort Worth assessed liquidated damages against SRO for delayed completion
caused by CGS.@  The trial court also found that CGS was not
entitled to recover the approximately $33,000.00 that it had requested pursuant
to line item twenty-three of SRO=s contract with the City, that Westfield was not entitled to offset
the amount awarded to Greenscape Pump from the amount awarded to CGS, and that
CGS was not entitled to attorney=s fees.








In November 2006, the trial
court signed an order granting Westfield=s motion for leave to amend its pleadings.  Westfield included for the first time an
assertion in its second amended petition that ASRO was assessed liquidated damages by the City of Fort Worth for
failure of the work to be completed on time@ and that ACGS was the
direct or indirect cause of the delay and that any liquidated damages assessed
against SRO and caused directly or indirectly by CGS should be offset against
any amounts recovered by CGS from Westfield.@ The trial court also signed its final judgment in November 2006
awarding CGS $41,006.42.  Westfield Aresolved@ Aall matters between@ it and Greenscape Pump.  Both
CGS and Westfield appeal.

III.  Sufficiency Arguments

In its first issue, CGS
argues that the evidence is insufficient to support the trial court=s twenty-eighth and twenty-ninth findings of fact that CGS failed to
timely perform its work, that the City assessed liquidated damages against SRO
for the delayed completion of the project because of CGS, and that CGS is
liable for liquidated damages caused by the delays in the amount of $15,000.00.  In its second issue, Westfield argues that
the evidence is insufficient to support the trial court=s twenty-seventh, thirtieth, thirty-first, thirty-fourth, and part of
the thirty-ninth findings of fact that CGS timely filed its September 28, 2004
payment bond claim and that CGS is entitled to recover $7,867.74.

A.     Standards of Review








Findings of fact entered in a case tried to the court have
the same force and dignity as a jury=s answers to jury
questions.  Anderson v. City of Seven
Points, 806 S.W.2d 791, 794 (Tex. 1991). 
The trial court=s findings of fact are reviewable for
legal and factual sufficiency of the evidence to support them by the same
standards that are applied in reviewing evidence supporting a jury=s answer.  Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  Conclusions of law may not be challenged for
factual sufficiency, but they may be reviewed to determine their correctness
based upon the facts.  Citizens Nat=l Bank v. City of
Rhome, 201 S.W.3d 254, 256 (Tex. App.CFort Worth 2006,
no pet.); Dominey v. Unknown Heirs and Legal Representatives of Lokomski,
172 S.W.3d 67, 71 (Tex. App.CFort Worth 2005,
no pet.).

We may sustain a legal sufficiency challenge only when (1)
the record discloses a complete absence of evidence of a vital fact; (2) the
court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of
Error, 38 TEX. L. REV. 361, 362B63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could and
disregard evidence contrary to the finding unless a reasonable fact-finder could
not.  City of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005).








Anything more than a scintilla of evidence is legally
sufficient to support the finding.  Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).  When
the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more
than a scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  More than a
scintilla of evidence exists if the evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about the existence of a vital
fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins.
Co.,
77 S.W.3d 253, 262 (Tex. 2002).

Any ultimate fact may be proved by circumstantial
evidence.  Russell v. Russell, 865
S.W.2d 929, 933 (Tex. 1993).  However, to
withstand a legal sufficiency challenge, circumstantial evidence still must
consist of more than a scintilla.  Blount
v. Bordens, Inc., 910 S.W.2d 931, 933 (Tex. 1995).








An assertion that the evidence
is factually insufficient to support a fact finding means that the evidence
supporting the finding is so weak or the evidence to the contrary is so
overwhelming that the answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  We are required to consider
all of the evidence in the case in making this determination, not just the
evidence that supports the finding.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406B07 (Tex.), cert. denied, 525 U.S. 1017 (1998).

B.     Legally Insufficient Evidence of Delay and
Liquidated

Damages Attributable to CGS

 








Although the trial court
prohibited Westfield from introducing evidence about delays caused by CGS and
resulting liquidated damages when it sustained CGS=s objections to Westfield=s delay evidence, denied Westfield=s oral motion for a trial amendment on liquidated damages, and
required Westfield to introduce the excluded evidence through an offer of
proof, the trial court later found that the City had assessed liquidated
damages against SRO for delays caused by CGS and that CGS was liable for
liquidated damages in the amount of $15,000.00. 
CGS argues that these findings are in Adirect conflict with the fact that the trial court sustained CGS=[s] objection disregarding any evidence of delays or liquidated
damages@ and that there is no evidence that CGS was responsible for the delays
and $15,000.00 in liquidated damages. 
Westfield responds by directing us to evidence admitted outside the
offer of proof, arguing that sufficient evidence supporting the challenged fact
findings exists there.  Because the trial
court excluded Westfield=s direct
evidence of CGS=s delays and
liquidated damages, all of the evidence relied upon by Westfield and analyzed
in our evidentiary sufficiency analysis below is circumstantial.

Circumstantial evidence can
establish an ultimate fact when the fact may be fairly and reasonably inferred
from other facts in the case.  Blount,
910 S.W.2d at 933.  A jury may not infer
an ultimate fact from meager circumstantial evidence that could give rise to
any number of inferences, none more probable than another.  Hammerly Oaks, Inc. v. Edwards, 958
S.W.2d 387, 392 (Tex. 1997).  In cases
with only slight circumstantial evidence, something else must be found in the
record to corroborate the probability of the fact=s existence or non-existence.  Marathon
Corp. v. Pitzner, 106 S.W.3d 724, 729 (Tex. 2003).  A vital fact may not be established by piling
inference upon inference.  Id.[1]


















Westfield argues that the
following evidence constitutes sufficient evidence of CGS=s delays and liquidated damages: Curtis Green, CGS=s vice president, made a comment to Anne Stith, Westfield=s bond claim counsel, in October 2003 that CGS was responsible for 98%
of the remaining work and that the work would be complete in two to three
months; CGS submitted a payment bond claim for work performed in July and
August 2004; the City assessed eighty days of liquidated damages against SRO,
and CGS=s contract with the City provides that CGS shall be liable for any
damages for delay sustained by SRO caused directly or indirectly by CGS; CGS
began work on the project on day 146 of the 316 day project; CGS=s work on the project was not completed until after the scheduled
completion date; certain items on a AFinal Inspection Punch List@ were not yet completed by CGS in the summer of 2004; and 396 days had
been charged on the project with eighty days of liquidated damages charged to
SRO.  All of this is slight
circumstantial evidence, none of which provides a reasonable basis for
inferring that CGS did not timely perform its work and caused the City to
assess liquidated damages against SRO for the delayed completion of the
job.  See Marathon Corp., 106
S.W.3d at 729.  Inferring that CGS did
not timely perform its work and that the City assessed damages against SRO for
delays caused by CGS based on the evidence above would have the effect of
allowing a fact finder to make such findings solely because the subcontractor
began working at some point after the project had begun, because the
subcontractor did not finish according to a schedule that had changed one or
more times, or because there was some delay associated with the
project.  This inference wholly ignores
the realities associated with a large-scale construction projectCthat change orders to the project are entered, that schedules for
completing portions of the project are altered, that contractors go out of
business, and that other unexpected issues sometimes arise unrelated to whether
a subcontractor performs Atimely.@  Consequently, Asomething else@ must be
found in the record to corroborate the probability of the challenged fact
findings= existence, but there is nothing, primarily because the trial court
excluded Westfield=s evidence
of delays and liquidated damages attributable to CGS.  See id. 

There is additional evidence
worth considering.  Green testified that
there were certain days that CGS did not appear on the job after CGS had begun
working on its portion of the project because SRO had not completed all of its
work, including Agrading@ and correctly installing Amass columns.@  He also testified that there were Aa few times@ that CGS
did not go out on the project because it had not been paid.  But once again, it is not a reasonable
inference that CGS failed to timely perform its work and caused the City to
assess liquidated damages against SRO for the delayed completion of the project
in the amount of $15,000 based on Green=s testimony; there is not a Alogical bridge between the proffered evidence and the necessary fact.@  See Lozano, 52 S.W.3d
at 152.








Stith testified about her
handling of CGS=s payment
bond claims.  In explaining why Westfield
had not paid CGS=s retainage
claim, Stith reasoned that Westfield had not been paid by the City until August
2005 and that A[w]hen it
was released from the City, there was a $50,800 back charge for liquidated
damages, and those liquidated damages we believed were attributable to Green
Scaping=s work.@  Somewhat different than the evidence above,
Stith=s conclusory statement is evidence of exactly what it states and
nothing more, that Westfield thought CGS was responsible for liquidated
damages.  It is not evidence
demonstrating that CGS did not timely perform its work, it is not evidence
demonstrating that CGS (by failing to timely perform its work) caused the City
to assess liquidated damages against SRO for the delayed completion of the
project, and it is not evidence demonstrating that CGS is liable for liquidated
damages in the amount of $15,000.  Findings
of fact twenty-eight and twenty-nine cannot be reasonably inferred from this
portion of Stith=s testimony,
and
her testimony does not provide the evidentiary corroboration that the evidence
detailed above is lacking.  Consequently, her testimony does not support
the trial court=s twenty-eighth and twenty-ninth fact
findings.








We hold that the evidence underlying the trial court=s twenty-eighth
and twenty-ninth findings of fact is so weak as to do nothing more than create
a mere surmise or suspicion of the fact findings= existence; it is
consequently no more than a scintilla of evidence.  See Kindred, 650 S.W.2d at 63; see
also Blount, 910 S.W.2d at 933. 
Accordingly, the evidence is legally insufficient to support the trial
court=s twenty-eighth
and twenty-ninth findings of fact. 
Having determined that the evidence is legally insufficient to support
the challenged fact findings, we need not consider CGS=s factual
sufficiency claim or its argument that the trial court erred by granting Westfield=s post-trial
motion to amend its pleadings.  See Tex. R. App. P. 47.1.  We sustain CGS=s first issue.

C.      Timeliness Of Payment Bond Claim

In its second issue, Westfield argues that the evidence is
legally and factually insufficient to support the trial court=s findings
awarding CGS $7,867.74.  It contends that
CGS failed to timely file the September 28, 2004 payment bond claim in which it
requested the $7,867.74 payment for work performed during July and August 2004
because CGS performed the same or similar work Aprior to July
2004.@








A governmental entity that enters into a public works
contract with a general contractor must under certain circumstances require the
contractor to execute performance and payment bonds before work begins.  Tex.
Gov=t Code Ann. ' 2253.021(a) (Vernon Supp.
2007).  The purpose of the payment bond
is to protect claimants who provide labor or materials in the construction of
public works because public property is protected from forced sale and
therefore may not be made the subject of a mechanic=s lien.  Redland Ins. Co. v. Sw. Stainless, L.P.,
181 S.W.3d 509, 511 (Tex. App.CFort Worth 2005,
no pet.).  ATo recover in a
suit under Section 2253.073 on a payment bond for a claim for payment for
public work labor performed or public work material delivered, a payment bond
beneficiary must mail to the prime contractor and the surety written notice of
the claim.@  Tex. Gov=t Code Ann. ' 2253.041(a) (Vernon 2000).  AThe notice must be
mailed on or before the fifteenth day of the third month after each month in
which any of the claimed labor was performed or any of the claimed material was
delivered.@  Id.
' 2253.041(b).  Although the statutes providing for payment
bonds and the procedures for making payment bond claims are to be liberally
construed, section 2253.041 is a Asubstantive
condition precedent to the existence of the cause of action.@  See Redland, 181 S.W.3d at 512; Capitol
Indem. Corp. v. Kirby Rest. Equip. & Chem. Supply Co., Inc., 170 S.W.3d
144, 147 (Tex. App.CSan Antonio 2005, pet. denied); Bunch
Elec. Co. v. Tex-Craft Builders, Inc., 480 S.W.2d 42, 45 (Tex. Civ. App.CTyler 1972, no
writ).

Here, Green testified that $7,867.74 of CGS=s claim on the
payment bond was for work performed in July and August 2004.  CGS had initially performed the work at some
point before July and August 2004, but an inspector rejected the work, causing
CGS to re-do the work.  Green recounted
that the City Adid not pay for it [the work] during that
time period until the new replacement was done.@  The bond claim that CGS submitted for work
performed in July and August 2004 is dated September 28, 2004.













The record does not disclose when CGS performed the
earlier, unacceptable work that Westfield argues triggered the section
2253.041(b)-deadline for submitting the payment bond claim, nor does it
disclose exactly when CGS performed the work in July 2004.  Nonetheless, assuming that CGS performed the
work at the earliest possible point in July 2004 (July 1, 2004), CGS=s September 28,
2004 payment bond claim was timely because CGS submitted it on or before the
fifteenth day of the third month after the month in which, according to the
plain language of the statute, claimed labor Awas performed@ or claimed
material Awas delivered@ by CGS.  See Tex.
Gov=t Code Ann. ' 2253.041(b).[2]  Westfield does not argue that CGS did not
perform the July and August 2004 work. 
Consequently, to the extent Westfield argues that CGS=s September 28,
2004 payment bond claim was untimely, the evidence is legally and factually
sufficient to support the trial court=s findings of fact
numbered twenty-seven, thirty, thirty-one, thirty-four, and
thirty-nine(b).  See Martinez, 977
S.W.2d at 334; Garza, 395 S.W.2d at 823.  The trial
court=s twelfth
conclusion of law is not erroneous to the extent Westfield argues that the
September 28, 2004 payment bond claim was untimely.  We overrule Westfield=s second issue.

IV.  Attorney=s Fees

In its second issue, CGS argues that the trial court abused
its discretion by not awarding it reasonable attorney=s fees.  CGS contends that, as a successful litigant,
it is entitled to attorney=s fees pursuant to
section 38.001 of the civil practice and remedies code.  Westfield responds that section 2253.074 of
the government code, which allows a trial court to award attorney=s fees as it deems
equitable, controls the instant case and that the trial court did not abuse its
discretion by not awarding CGS attorney=s fees.  We agree with Westfield.








The supreme court has considered the issue of competing
statutes allowing for the recovery of attorney=s fees in the
context of a case involving a beneficiary suing to recover under a payment bond
claim.  See New Amsterdam Cas. Co. v.
Tex. Indus., Inc., 414 S.W.2d 914, 915B16 (Tex.
1967).  In New Amsterdam, the
trial court had granted summary judgment against the surety and in favor of the
beneficiary on a payment bond claim.  Id.
at 914.  The trial court awarded the
beneficiary attorney=s fees even though article 5160, section
2253's predecessor, did not allow for the recovery of attorney=s fees at the
time.  Id. at 914B15.  The surety argued that the attorney=s fees were
nonetheless sustainable under article 2226, the progenitor of chapter 38 of the
civil practice and remedies code.  Id.
at 916.  But the court disagreed,
reasoning as follows:

[A]rticle 2226 has no application
to the claim of an unpaid materialman against the surety on an Article 5160
payment bond.  The claim and ensuing suit
are grounded entirely on the surety obligation. . . .  Respondent forcefully argues that Article
2226 can be extended by implication to include the claim against the surety by
reading this statute with Article 5160 which was enacted for the purpose of guaranteeing
full and prompt payment to labor and material claimants on public works
projects.  But we cannot thus supply by
implication the necessary statutory basis for an award of attorney=s fees.  Such must be found in the terms of the
legislative enactment.

 

Id.  (citations omitted).  The supreme court reversed the award of
attorney=s fees, declining
to sustain the award under article 2226.[3]








Here, section 2253.074 now expressly allows for an award of
attorney=s fees in a
proceeding to enforce a payment bond claim. 
Tex. Gov=t Code Ann. ' 2253.074
(Vernon 2000).  Like the proceedings in New
Amsterdam, CGS=s Aclaim and ensuing
suit are grounded entirely on the surety obligation.@  New Amsterdam, 414 S.W.2d at 916.  Consequently, we construe the trial court=s decision not to
award CGS attorney=s fees pursuant to the terms of section
2253.074 of the government code, not chapter 38 of the civil practice and
remedies code.








CGS argues that the trial court could not have refused to
award CGS any attorney=s fees because Westfield failed to
controvert the reasonableness of the fees. 
The supreme court has held that when a statute provides that the trial
court Amay award@ attorney=s fees, the trial
court has Adiscretion in deciding whether to award
attorney fees or not.@  Bocquet v. Herring, 972 S.W.2d 19, 20
(Tex. 1998) (emphasis added). 
Conversely, A[s]tatutes providing that a party >may recover,= >shall be awarded,= or >is entitled to= attorney fees are
not discretionary.@  Id.  For example, chapter 38 provides that a
person Amay recover@ attorneys
fees.  Tex.
Civ. Prac. & Rem. Code Ann. ' 38.001
(Vernon 1997).  Thus, although a trial
court has the discretion to set the amount of attorney=s fees, it does
not have the discretion to completely deny attorney=s fees if they are
proper under the circumstances. 
Hoeffner, Bilek & Eidman, L.L.P. v. Guerra, No. 13-01-00503-CV,
2004 WL 1171044, at *12 (Tex. App.CCorpus Christi May
27, 2004, pet. denied) (mem. op.).  Here,
section 2253.074 states, AA court may award costs and
reasonable attorney fees that are equitable in a proceeding to enforce a claim
on a payment bond or to declare that any part of a claim is invalid.@  Tex.
Gov=t Code Ann. ' 2253.074. (emphasis added).  Because the trial court Amay award@ attorney=s fees that are
equitable, the trial court had the discretion to award attorney=s fees or not.  See Bocquet, 972 S.W.2d at 20; S.A.
Maxwell Co. v. R.C. Small & Assocs., Inc., 873 S.W.2d 447, 456 (Tex.
App.CDallas 1994, writ
denied) (A[Section 2253] does not mandate an award
of attorney=s fees to the prevailing party.  In fact, neither party in a McGregor Act
proceeding is entitled to an award as a matter of right.@).

We review a trial court=s award of
attorney=s fees under
section 2253.074 for an abuse of discretion. 
S.A. Maxwell, 873 S.W.2d at 456. 
A trial court abuses its discretion when it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241B42 (Tex. 1985).

Finding of fact twenty-four, which is not challenged,
states as follows:

No work or materials as originally
required by the City under line 23 of the Contract was performed or provided by
CGS.  The rock salt finish 5 concrete panels
with engraving were not provided by CGS. 
When CGS submitted its sixth claim for payment, CGS knew that it had not
performed the work for the now deleted line 23, yet CGS submitted the claim
seeking payment for work not performed. 
CGS knowingly submitted an invalid claim for work not performed under
line item 23.

 

Part
of finding of fact thirty-six provides as follows:








Additionally CGS= claim for attorney fees related to
its claim for work performed under line item 23 was not reasonable and
necessary since the Court has found that no work as required under line item 23
was performed by CGS; the Court finds that a majority, if not most, of the
portion of CGS= attorney fees were related to this
claim alone. . . .  For these
reasons, the Court does not award to CGS, nor does it find that it is entitled,
to a recovery of its attorneys fees.

 

Considering
that section 2253.074 allows a trial court to award reasonable attorney=s fees Athat are
equitable,@ the trial court could have concluded that
it would not have been equitable to award CGS attorney=s fees because CGS
Aknowingly
submitted an invalid claim for work not performed under line item 23,@ to which Aa majority, if not
most, of the portion of CGS= attorney fees
were related to.@ 
Consequently, we cannot say that the trial court=s decision not to
award CGS attorney=s fees was arbitrary or unreasonable and,
therefore, an abuse of discretion.  See
Downer, 701 S.W.2d at 241B42.  We overrule CGS=s second issue.

V. 
Offsetting Monies Paid to Greenscape Pump

In its first issue, Westfield argues that the trial court
erred by failing to offset CGS=s award by an
amount equal to Greenscape Pump=s award.
Considering that Greenscape Pump=s claim was for
retainage due under its contract with CGS and that WestfieldCnot CGSCpaid Greenscape
Pump, Westfield argues that it is equitably subrogated to Greenscape Pump=s rights against
CGS.








When equitable subrogation is an issue, each case is
usually controlled by its own facts.  Providence
Inst. for Sav. v. Sims, 441 S.W.2d 516, 519 (Tex. 1969); Farm Credit
Bank of Tex. v. Ogden, 886 S.W.2d 305, 310 (Tex. App.CHouston [1st
Dist.] 1994, no writ).  The doctrine allows
a party who pays the debt of another to put on the released creditor=s shoes and
collect reimbursement.  Drilltec
Techs., Inc. v. Remp, 64 S.W.3d 212, 216 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).  Subrogation is
more widely known in the context of insurance companies seeking subrogation
from their insureds for having involuntarily, under a contract of indemnity,
paid a debt for which another is liable. 
Argonaut Ins. Co. v. Allstate Ins. Co., 869 S.W.2d 537, 541B42 (Tex. App.CCorpus Christi
1993, writ denied).  The underlying
justification for such a subrogation suit is to prevent the insured from receiving
a double recovery.  Id.  However, the doctrine is broad enough to
include every instance in which one person, not acting voluntarily, has paid a
debt for which another was primarily liable and which in equity and good
conscience should have been discharged by the latter.  Id.








CGS=s contract with Greenscape Pump requires
CGS to pay Greenscape Pump=s retainage only
after CGS received its retainage under its contract with SRO.  Westfield did not pay CGS its retainage, so
under the terms of the contract, CGS did not pay Greenscape Pump its
retainage.  Instead of suing CGS for the
amount owed, Greenscape Pump sued Westfield and prevailed.  See Tex.
Gov=t Code Ann. ' 2253.073(a) (Vernon 2000) (AA payment bond
beneficiary who has provided public work labor or material under a public work
contract for which a payment bond is furnished under this chapter may sue the
principal or surety, jointly or severally, on the payment bond if the claim is
not paid before@ a certain time.).

There is nothing in the record to indicate that the amount
recovered by CGS against Westfield for retainage excluded the amount of
retainage owed by CGS to Greenscape Pump, especially considering that CGS did
not have to pay Greenscape Pump its retainage until CGS had been paid its
retainage and that, at the time of trial, CGS had not paid Greenscape Pump its
retainage.  Westfield=s subsequent
satisfaction of Greenscape Pump=s judgment
simultaneously eliminated the retainage balance owed by CGS to Greenscape Pump
under the CGSCGreenscape Pump contract.  Because Westfield paid Greenscape Pump an
amount that CGS was contractually bound to pay to Greenscape Pump, CGS=s recovery against
Westfield is $5,561.25 too much.








Directing us to section 2253.073(a)=s language
allowing a payment bond beneficiary to sue the principal or surety jointly or
severally on a payment bond claim, CGS responds that an offset would be
inappropriate because Greenscape Pump had the option of recovering from
Westfield.  See id.  But Greenscape Pump=s ability to
recover from Westfield instead of CGS or the principal is irrelevant for
determining whether Westfield is entitled to offset a portion of CGS=s recovery.  And Westfield=s contention that
it is entitled to deduct $44,183.49, not just $5,561.25, from CGS=s award against
Westfield is likewise unpersuasive; Westfield is entitled to an offset of only
$5,561.25, an amount representing Greenscape Pump=s claim against
Westfield, excluding interest, reasonable attorneys= fees, and court
costs.

Accordingly, we sustain Westfield=s first issue to
the extent it argues that the trial court erred by failing to offset CGS=s award by an
amount equal to Greenscape Pump=s recovery against
Westfield of $5,561.25.

 

 

 

 

 

 

 

 

 

 








VI.  Conclusion

Having sustained CGS=s first issue, we
reverse the trial court=s award of liquidated damages to Westfield
in the amount of $15,000.  Having
sustained Westfield=s first issue in part, Westfield is
entitled to offset the amount recovered by CGS in the amount of $5,561.25.  We render judgment that CGS recover the
amount of $50,445.17 from Westfield.[4]  Having overruled CGS=s and Westfield=s second issues,
we affirm the remainder of the trial court=s judgment.

 

 

                                 DIXON W. HOLMAN

JUSTICE

 

 

PANEL
A:  HOLMAN, GARDNER, and MCCOY, JJ.

 

DELIVERED:
February 21, 2008      











[1]In Lozano
v. Lozano, Chief Justice Philips explained the equal inference rule=s
application to circumstantial evidence in light of the no evidence standard of
review as follows:

 

The
equal inference rule provides that a jury may not reasonably infer an ultimate
fact from meager circumstantial evidence Awhich could give rise to any
number of inferences, none more probable than another.@  Thus, in cases with only slight
circumstantial evidence, something else must be found in the record to
corroborate the probability of the fact=s existence or non-existence.

 

. . .
.

 

Properly
applied, the equal inference rule is but a species of the no evidence rule,
emphasizing that when the circumstantial evidence is so slight that any
plausible inference is purely a guess, it is in legal effect no evidence.  But circumstantial evidence is not legally
insufficient merely because more than one reasonable inference may be drawn
from it.  If circumstantial evidence will
support more than one reasonable inference, it is for the jury to decide which is
more reasonable, subject only to review by the trial court and the court of
appeals to assure that such evidence is factually sufficient.

 

. . . . 

 

Circumstantial
evidence may be used to establish any material fact, but it must transcend mere
suspicion.  The material fact must be
reasonably inferred from the known circumstances.

 

. . .
.

 

[S]uspicion
and conjecture are not evidence.  Legally
sufficient circumstantial evidence requires a logical bridge between the
proffered evidence and the necessary fact.

 

52
S.W.3d 141, 148B52
(Tex. 2001) (Philips, C.J., concurring and dissenting).





[2]When statutory language is clear
and unambiguous, a statute should be given its plain meaning.  Employers Cas. Co. v. Dyess, 957
S.W.2d 884, 889 (Tex. App.CAmarillo 1997, writ denied).





[3]We do not read the court=s subsequent decision in Great
Am. Ins. Co. v. North Austin Mun. Util. Dist. No.1, 908 S.W.2d 415, 427B28 & n.11 (Tex. 1995), as
permitting the recovery of attorney=s fees under chapter 38 because that case dealt with
recovery under a performance bond, not a payment bond, which the court
expressly noted and distinguished in footnote eleven.





[4]This amount represents the amount
of the original judgment awarded CGS ($41,006.42) plus $15,000 less
$5,561.25.  This amount excludes any
amounts for prejudgment and postjudgment interest as set forth in the original
judgment.