# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00255-CV

**Dibco Underground, Inc., and Liberty Mutual Insurance Co., Appellants**

**v.**

**JCF Bridge & Concrete, Inc., Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY, NO. C-1-CV-07-007743, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## MEMORANDUM OPINION

Appellee JCF Bridge & Concrete, Inc. ("JCF") filed a suit on a sworn account against appellants Dibco Underground, Inc. ("Dibco") and Liberty Mutual Insurance Co. ("Liberty Mutual") alleging that Dibco, the contractor on a public-works project for the City of Austin, failed to pay JCF, a subcontractor, for services rendered pursuant to the contract between them. JCF sued Liberty Mutual in its capacity as the surety that issued the project's payment bond. Dibco filed a counterclaim asserting that JCF breached the contract by failing to perform. After multiple discovery disputes, the trial court granted default judgment against appellants as a discovery sanction. The court also granted a no-evidence summary judgment for JCF on Dibco's counterclaim and affirmative defenses, a no-evidence summary judgment for JCF on Liberty Mutual's defenses and on JCF's claim against Liberty Mutual, and a traditional summary judgment for JCF on its claim against Liberty Mutual. Finally, the trial court struck several paragraphs of the affidavit of Dibco's

president that served as the verification for Dibco and Liberty Mutual's sworn denial. In twelve issues, appellants assert that the trial court (1) abused its discretion by imposing "death-penalty" discovery sanctions; (2) erred in granting JCF's motions for summary judgment; (3) abused its discretion by striking portions of DiMillo's affidavit; and (4) erred in awarding JCF attorney's fees. We will reverse the trial court's judgment and remand the cause for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The City of Austin hired Dibco as the general contractor on a public-works project to replace the existing Barton Creek Lift Station. Dibco, in turn, hired JCF as a subcontractor to complete a portion of the concrete work. Dibco alleges that JCF did not complete the work. JCF, on the other hand, claims that the scope of the work changed during the job and that JCF was never paid for the additional work it performed. Dibco denies this, asserting that JCF seeks payment for work either never performed or never authorized by Dibco.

JCF filed a suit on a sworn account pursuant to rule of civil procedure 185, alleging that Dibco, as general contractor, and Liberty Mutual, as surety on the payment bond, owed it money for work done under the subcontract. Appellants filed separate sworn denials, both of which were verified by the affidavit of Dibco's president, Ettore DiMillo.

Discovery disputes arose between the parties. Among other complaints, JCF took issue with what it saw as Liberty Mutual's failure to produce documents from its own files and to designate a corporate representative for deposition who was an actual employee of Liberty Mutual. For its part, Dibco objected to the breadth of JCF's request that it produce any and all contracts related to the project, all correspondence between Dibco and other suppliers and vendors on the

2

project, and all payments made to any of its suppliers. Unable to come to an agreement with appellants, JCF filed a motion to compel appellants to file complete responses. According to appellants, after a hearing on JCF's motion, the court orally ordered Dibco to supplement its responses to JCF's request for disclosure to reflect the identity of several subcontractors.[1] JCF was unsatisfied with that resolution and moved for a rehearing of its motion to compel. After a second hearing, the court overruled several of appellants' objections and ordered them to amend their discovery responses, which appellants did. Still unsatisfied with appellants' responses, JCF moved for default judgment as a discovery sanction. *See* Tex. R. Civ. P. 215.2(5). JCF also filed a no-evidence motion for summary judgment on Dibco's counterclaim and affirmative defenses as well as traditional and no-evidence motions for summary judgment against Liberty Mutual on JCF's claims and Liberty Mutual's affirmative defenses. JCF also objected to parts of the DiMillo affidavit and requested that they be stricken.

After a hearing, the trial court granted all of JCF's motions. Specifically, the trial court (1) struck paragraphs 3, 4, 5, and 6 from DiMillo's affidavit as "conclusory and inadmissible"; (2) granted default judgment against both Dibco and Liberty Mutual as a discovery sanction under rule 215.2(5); (3) granted JCF's traditional and no-evidence summary-judgment motions against Liberty Mutual as to its affirmative defenses and as to JCF's claims against Liberty Mutual; (4) granted JCF's no-evidence motion for summary judgment on Dibco's counterclaim and affirmative defenses; (5) awarded JCF $92,504.03 in damages; and (6) awarded JCF attorney's fees.

---

[1] The record does not contain a transcript of that hearing. The trial court's order, which is in the record, merely states that "this Court finds that at this time Plaintiff's Motion as submitted should be DENIED."

# STANDARD OF REVIEW

## *Discovery Sanctions*

We review a trial court's imposition of discovery sanctions for an abuse of discretion. *Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). In general, a trial court abuses its discretion when it acts without reference to any guiding rules or principles—i.e., when it acts arbitrarily or unreasonably. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). In discovery-sanction cases, a trial court's discretion is limited by the requirement of rule 215.2 that the sanctions be "just" and by the parties' constitutional right to due process. Tex. R. Civ. P. 215.2(2)(b); *Transamerican*, 811 S.W.2d at 918-19.

## *Summary Judgment*

Whether summary judgment is proper is a question of law that we review de novo. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). "Traditional" summary judgment is proper if (1) there are no genuine issues of material fact, and (2) the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). To prevail on a traditional motion for summary judgment, plaintiff must conclusively prove all elements of its cause of action as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003).

4

To prevail on a "no-evidence" motion for summary judgment on a defendant's counterclaim or affirmative defenses, on which the defendant would have the burden of proof at trial, the plaintiff must allege that the defendant has no evidence to support one or more elements of each claim or defense. Tex. R. Civ. P. 166(a)(i); *see Southwest Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The burden then shifts to the defendant to produce more than a scintilla of probative evidence to support each challenged element of its counterclaim or affirmative defense. *Forbes, Inc. v. Granada Biosciences*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists when reasonable and fair-minded people could differ in their conclusions based on that evidence. *Id.*

## DISCUSSION

### Discovery Sanctions

In their first issue, appellants complain that the trial court abused its discretion by granting a default judgment against them as a discovery sanction.

Trial courts have wide discretion to use discovery sanctions to ensure compliance with the discovery rules, to punish violators, and to deter would-be violators. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex. 1992). As noted above, a trial court's imposition of discovery sanctions is reviewed for an abuse of discretion, but that discretion is circumscribed to ensure that sanctions comport with due process and are "just" as required by rule 215.2. *Transamerican*, 811 S.W.2d at 917. For sanctions to be just, there must be a direct relationship between the offensive conduct and the sanction, and the sanction must not be excessive. *Chrysler Corp.*, 841 S.W.2d at 850. For a sanction to avoid being excessive, "a court must consider relatively

5

less stringent sanctions first to determine whether lesser sanctions will fully promote compliance, deterrence, and discourage further abuse." *Id.* Sanctions that prevent a decision on the merits—i.e., "death-penalty sanctions"—"cannot be justified 'absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.'" *Id.* (quoting *Transamerican*, 811 S.W.2d at 918). "Discovery sanctions cannot be used to adjudicate the merits . . . unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *Transamerican*, 811 S.W.2d at 918 (citing *Insurance Corp. of Ireland v. Compaigne des Bauxites de Guinee*, 456 U.S. 694, 705-06 (1982)). The supreme court has reiterated that "'[c]ase determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules.'" *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (quoting *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993)).

JCF alleged five instances of discovery abuse by appellants: (1) Liberty Mutual did not produce any documents in response to the court's order compelling discovery; (2) Liberty Mutual failed to provide information regarding the method of calculating damages under Texas Rule of Civil Procedure 194.2(d); (3) Liberty Mutual failed to produce a corporate representative for deposition; (4) Dibco failed to disclose a relevant settlement agreement pursuant to Texas Rule of Civil Procedure 192.3(g); and (5) appellants did not verify their interrogatory answers. In response, appellants argued that (1) the record shows that Liberty Mutual produced responsive documents via its agent, Aviva Insurance Company, which Liberty Mutual adopted as its own documents; (2) Liberty Mutual's response to JCF's request for disclosure recites that "Liberty Mutual denies that

6

Plaintiff can recover any economic damages" and that Liberty Mutual itself did not seek damages in this suit, so it did not have to provide a method of calculating its damages; (3) Liberty Mutual had produced for deposition Jason Malik, a representative of Aviva, who had the requisite knowledge and who spoke as an agent of Liberty Mutual; (4) JCF had knowledge of and access to the settlement agreement via an open records request to the City of Austin, and the agreement was also part of the documents that Dibco allowed JCF's counsel to inspect and copy; and (5) the record shows that appellants verified their interrogatory answers, albeit belatedly.

The trial court made the following relevant findings of fact:

> 6. Defendant Liberty Mutual failed to produce any documents or any disclosures regarding damages or otherwise provide any information or calculations of damages as required by the [June 10, 2008] Order [on JCF's motion to compel] and the Texas Rules of Civil Procedure and therefore is in violation of the June 10, 2008 Order.
>
> 7. Defendant Liberty Mutual failed to produce a corporate representative for deposition despite the deposition being properly noticed by Plaintiff.
>
> 8. Defendant Dibco submitted a claim to the City of Austin for increased cost and time, and hired an expert to assist with its claim to the city.
>
> 9. Dibco did not properly disclose this claim, the expert, or any related settlement agreement as required by the June 10, 2008 Order.
>
> 10. Defendants Liberty Mutual and Dibco failed to properly verify their interrogatory responses.

The court also made the following relevant conclusions of law:

> 2. Plaintiff has been materially prejudiced by Defendants [sic] failure to provide evidence even after being ordered to do so by the Court. . . .

3. A default judgment is warranted because lesser sanctions would not and could not cure the prejudice to Plaintiff, especially in light of two prior hearings concerning Defendants [sic] failure to adequately respond to discovery. Lesser sanctions failed to produce compliance.

After reviewing the record and considering the trial court's findings of fact and conclusions of law, we conclude that death-penalty sanctions were not justified under the particular circumstances of this case. First, the record does not show a direct relationship between the offensive conduct and the sanction imposed. *See Chrysler Corp.*, 841 S.W.2d at 850. While the court's conclusions of law recite that JCF was materially prejudiced and could not prosecute its claim without the desired discovery, the evidence in the record does not support that conclusion. It is unclear how Liberty Mutual's production of documents through its agent, Aviva—documents that Liberty Mutual adopted as its own—materially prejudiced JCF such that it could not prosecute its claim. The same is true of Liberty Mutual's designation of Jason Malik, an employee of Aviva, as its representative for deposition. Liberty Mutual's counsel stated on the record in the trial court and at oral argument in this Court that Malik was the most qualified representative of Liberty Mutual to testify on the topics requested by JCF and that his statements would bind Liberty Mutual. Furthermore, late verification of interrogatory answers, failure to produce a settlement agreement that was otherwise publicly available, and failure to specify the method by which a party calculates damages it was not seeking would not, absent an otherwise egregious course of conduct not shown here, warrant death-penalty sanctions. *See Transamerican*, 811 S.W.2d at 920 (Gonzalez, J., concurring) ("[T]he punishment must fit the crime.").

8

Second, death-penalty sanctions are excessive under the circumstances shown here. Despite the conclusion of law that "[l]esser sanctions failed to produce compliance," the record does not show that the court ever imposed lesser sanctions; it had merely ordered appellants to comply with some of JCF's discovery requests. While in some limited instances a court may impose death-penalty sanctions without first trying lesser sanctions, the present record does not show that the conduct of appellants rose to the level of "flagrant bad faith" or "callous disregard for the responsibilities of discovery" such that death-penalty sanctions were warranted without first attempting to secure compliance through lesser sanctions. *Chrysler Corp.*, 841 S.W.2d at 850.

Third, there is no indication in the record that appellants' defenses or counterclaim lack merit. As noted above, "[d]iscovery sanctions cannot be used to adjudicate the merits . . . unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *Transamerican*, 811 S.W.2d at 918. This is especially true here, as appellants challenge the veracity of JCF's claim in its entirety.

In light of the foregoing, we sustain appellants' first issue and hold that the trial court abused its discretion in granting a default judgment against appellants. Because we sustain appellants' first issue, we need not address issues two and three.

### *Motions for Summary Judgment*

By their fourth through tenth issues, appellants assert that the trial court erred in granting JCF's three motions for summary judgment. We will address each motion in turn.

9

*(i) No-Evidence Summary Judgment Against Dibco*

Dibco asserts that the no-evidence summary judgment rendered against it was improper because (1) Dibco proved that it was registered to do business in Texas and therefore could maintain a counterclaim, (2) the motion with respect to Dibco's affirmative defenses was not sufficiently specific as required by rule 166a(i), (3) Dibco raised a fact issue as to each element of its affirmative defenses and its counterclaim, and (4) the court allowed insufficient time for discovery.

In its no-evidence motion for summary judgment against Dibco's counterclaim, JCF asserted that because Dibco, a Michigan corporation, had not obtained a certificate of authority to do business in Texas from the secretary of state, it was not allowed to maintain its counterclaim. *See* Tex. Bus. Org. Code Ann. § 9.051(b) (West 2009). Dibco acknowledged that when it filed its counterclaim it did not have the proper certificate; however, it obtained its certificate before JCF's motion was filed. In its appellee's brief, JCF conceded that Dibco's eventual acquisition of a certificate of authority was sufficient to meet the requirements of section 9.051(b). Consequently, we sustain appellants' fourth issue.

We now turn to JCF's no-evidence motion for summary judgment on Dibco's affirmative defenses. The relevant portion of JCF's motion, in its entirety, is set out below.

> Nor can Dibco provide any evidence to support the essential elements of its defenses that: (a) it properly denied the account; (b) it performed by tendering payment; (c) there was a failure of consideration; (d) Dibco was misidentified; (e) there was no valid contract; (f) notice of proof of loss with a claim for damage by JCF was not given as alleged; (g) there was a failure of condition precedent; (h) JCF failed to mitigate its damages; (i) JCF repudiated the contract or there was an anticipatory

10

breach; (j) any accord and satisfaction occurred; or (k) that its claims are barred by the statute of frauds.

JCF's motion is insufficient to meet the specificity requirement of rule 166a(i). Rule 166a(i) allows a movant, after reasonable time for discovery has elapsed, to move for summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). The rule requires that "[t]he motion must state the elements as to which there is no evidence." *Id.* JCF's motion does not challenge specific elements of Dibco's affirmative defenses, nor even differentiate its affirmative defenses from its regular defenses. Consequently, it is not sufficiently specific to meet the requirements of rule 166a(i). *See Thomas v. Omar Invs., Inc.*, 156 S.W.3d 681, 685 (Tex. App.—Dallas 2005, no pet.) ("[Defendants'] motion for summary judgment fails to meet the requirements of Rule 166a(i) because it does not specify any elements of [plaintiffs'] claims that lack supporting evidence."). Because we sustain appellants' fifth issue, we need not address appellants' sixth and seventh issues.

### (ii) No-Evidence Summary Judgment Against Liberty Mutual

JCF brought a combined no-evidence and traditional motion for summary judgment against Liberty Mutual. The no-evidence portion of the motion was directed at Liberty Mutual's affirmative defenses. It is set forth below:

Liberty can provide no competent summary judgment evidence to establish any defenses enumerated in its Answer, or to controvert JCF's claim as set forth above. Specifically, Liberty has no evidence that "JCF has performed all acts required of it to establish and perfect a claim on the bond," under Texas Government Code

11

Chapter 2253 and/or under Texas Property Code Chapter 53. As such, this court should grant JCF summary judgment as to all of Liberty's affirmative defenses, dismissing the same, and render judgment for JCF on these issues.

Excluding the perfection-of-bond issue, JCF's motion against Liberty Mutual falls short of the specificity requirements of rule 166a(i) for the same reasons as its motion against Dibco. *See id.*

The perfection-of-bond issue also fails, not for lack of specificity, but because Liberty Mutual would not, at trial, bear the burden to prove that "JCF has performed all acts required of it to establish and perfect a claim on the bond." *See* Tex. R. Civ. P. 166a(i); *Thomas*, 156 S.W.3d at 684 (party with burden of proof at trial cannot bring no-evidence summary-judgment motion). JCF contends that Liberty Mutual bears the burden of proof on this issue because of this case's procedural posture as a suit on a sworn account under rule 185. JCF argues that, under rule 185, once it filed a properly verified suit on a sworn account it made out a prima facie case against Liberty Mutual. *See* Tex. R. Civ. P. 185. The burden, says JCF, then shifted to Liberty Mutual to file a proper sworn denial. *See id.* (plaintiff's sworn petition is prima facie case "unless the party resisting such claim shall file a written denial, under oath"). JCF asserts that Liberty Mutual's sworn denial was insufficient to rebut the presumption in favor of JCF because Liberty Mutual's affidavit was "conclusory." Appellants, on the other hand, have maintained from the beginning of the suit that JCF's petition itself was insufficient to constitute a proper suit on a sworn account because, among other things, it failed to show how its claim is based on a "systematic record" as the rule requires. *See Nguyen v. Short, How, Frels & Heitz, P.C.*, 108 S.W.3d 558, 562 (Tex. App.—Dallas 2003, pet. denied) (if there is deficiency in plaintiff's sworn account, plaintiff has not made prima facie case); *see also Panditi v. Apostle*, 180 S.W.3d 924, 926 (Tex. App.—Dallas 2006, no pet.) ("[D]efendant

is not required to file a sworn denial if the plaintiff's suit on a sworn account was not properly pleaded."). We agree with appellants.

To establish a prima facie case in a suit on a sworn account, a plaintiff must strictly comply with rule 185. *See Nguyen*, 108 S.W.3d at 562. By its own terms, rule 185's burden-shifting provision is meant to apply only when a plaintiff's suit is based on certain types of claims "on which a systematic record has been kept." Tex. R. Civ. P. 185. "The systematic record of labor or materials furnished must clearly identify the amount or nature of the labor done or of the materials furnished, the date that such labor was performed or materials furnished, the charge for the labor, and the charge for materials." *Jones v. Ben Maines Air Conditioning, Inc.*, 621 S.W.2d 437, 438 (Tex. Civ. App.—Texarkana 1979, no writ); *see also Brown Elec. Contractors, Inc. v. Kelly*, 595 S.W.2d 610, 611 (Tex. Civ. App.—Austin 1980, no writ). "The account must show with reasonable certainty the name, date, and charge for each item, and provide specifics or details as to how the figures were arrived at." *Panditi*, 180 S.W.3d at 926. "General statements contained in an affidavit without description of specific items are insufficient to comply with Rule 185." *Jones*, 621 S.W.2d at 438; *see also Panditi*, 180 S.W.3d at 927 (regular billing statements sufficient); *Powers v. Adams*, 2 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (itemized monthly statements of services rendered listing offsets, payments, and credits sufficient); *Enernational Corp. v. Exploitation Eng'rs, Inc.*, 705 S.W.2d 749, 750-51 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (dated invoices showing work performed sufficient).

In the present case, JCF has not attached a systematic record to any of its pleadings, incorporated one by reference, or averred that one actually exists. Its "sworn statement of account"

13

merely states that Dibco owes JCF certain amounts for "labor performed and/or materials delivered" and divides the amounts into three time periods: (1) November 2006 through December 5, 2006; (2) December 6 through December 31, 2006; and (3) March and April 2007. The sworn-account affidavit also states that JCF is owed $54,342.28 for "Overhead and Profit." For the reasons stated above, this affidavit, which was apparently created for purposes of this lawsuit and does not set out the information normally found in a systematic record, is insufficient to properly plead a claim under rule 185. *See Jones*, 621 S.W.2d at 438 ("General statements contained in an affidavit without description of specific items are insufficient to comply with Rule 185."). Having not properly pleaded a claim under rule 185, JCF cannot invoke the rule's burden-shifting presumption. Because JCF would bear the burden of proof on its claim at trial, it was error to grant JCF's no-evidence summary-judgment motion on Liberty Mutual's perfection-of-bond defense.

Having sustained appellants' eighth issue, we need not address their ninth. Also, because we hold that JCF's petition fails as a suit on a sworn account, we need not consider appellants' eleventh issue—whether the trial court erred in striking certain portions of DiMillo's affidavit.[2]

---

[2] The trial court struck paragraphs three through six of DiMillo's affidavit as "conclusory." Without deciding whether the statements were, in fact, mere legal conclusions, we note that even a basic verified denial has been held to be sufficient to rebut rule 185's evidentiary presumption. *See Rizk v. Financial Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 863 (Tex. 1979) (statement that plaintiff's sworn-account items were "not just or true in whole or in part" sufficient to meet requirements of rule 185); *see also Five Star Energy Corp. v. Sowell, Ogg & Hinton*, 640 S.W.2d 722, 725 (Tex. App.—Houston [14th Dist.]1982, no writ) (following *Rizk*).

(iii) *Traditional Summary Judgment Against Liberty Mutual*

In their tenth issue, appellants assert that the trial court erred when it granted JCF's traditional motion for summary judgment against Liberty Mutual. JCF asserted that it was entitled to judgment against Liberty Mutual, Dibco's surety, as a matter of law because it sent proper notice of its claim to Liberty Mutual and Dibco pursuant to government code section 2253.041 and did not receive a notice of dispute from either party within 60 days. Government code section 2253.041 states in pertinent part:

(a)    To recover in a suit under Section 2253.073 on a payment bond for a claim for payment for public work labor performed or public work material delivered, a payment bond beneficiary must mail to the prime contractor and the surety written notice of the claim.

(b)    The notice must be mailed on or before the 15th day of the third month after each month in which any of the claimed labor was performed or any of the claimed material was delivered.

Tex. Gov't Code Ann. § 2253.041 (West 2008). JCF sent two notices. The first was dated March 14, 2007, and included a one-line entry for work dated "November through December 5, 2006," and a one-line entry for work dated "December 6 through December 31, 2006." The second was dated June 15, 2007. It included two additional claims—a one-line entry for work dated "March and April 2007" and an undated one-line entry for "Overhead and Profit."

Liberty Mutual argues that JCF's March 2007 notice was untimely with respect to claims for labor done or materials delivered in November 2006. It also asserts that "Overhead and Profit" constitute neither "public work labor" nor "public work material" as those terms are defined in chapter 2253 of the government code. *See id.* § 2253.001 (West 2008). Because chapter 2253

15

limits recovery on a payment bond to claims related to furnishing public work labor and material, Liberty Mutual argues that JCF's claim for overhead and profit is improper. For those reasons, Liberty Mutual argues that JCF has not shown itself entitled to judgment as a matter of law.

We agree that summary judgment on this issue was improper. First, JCF's March 2007 notice appears to be untimely with respect to its claims for labor and materials provided in November 2006. A notice of claim for labor performed or materials delivered during November 2006 had to be mailed by February 15, 2007, the "15th day of the third month after each month in which any of the claimed labor was performed or any of the claimed material was delivered." *Id.* JCF sent its first notice on March 14, 2007. Timely notice under section 2253.041 is a substantive condition precedent to recovery under chapter 2253. *See Harvest Constr. Team v. Hartford Fid. & Bonding*, No. 05-03-00006-CV, 2003 WL 23095668, at *2 (Tex. App.—Dallas Dec. 31, 2003, pet. denied) (citing *Bunch Elec. Co. v. Tex-Craft Builders, Inc.*, 480 S.W.2d 42, 45 (Tex. Civ. App.—Tyler 1972, no writ) (discussing requirements of substantially similar predecessor statute)); *see also In re Contractor Tech., Ltd.*, 529 F.3d 313, 321 (5th Cir. 2008). At a minimum, Liberty Mutual's assertion that JCF's notice was untimely as to its claim for work done in November raises a fact question as to the proper amount of JCF's damages.

Second, chapter 2253 allows a payment bond beneficiary like JCF to recover only for "public work labor" and "public work material" as those terms are defined in section 2253.001. *See* Tex. Gov't Code Ann. § 2253.001. Part of JCF's claim in the present case includes an undated entry for "Overhead and Profit." While it is conceivable that overhead and profit could be components of charges for public work material and labor, chapter 2253.001 does not appear to

16

contemplate recovery of those items separately. At the very least, there is a fact question as to whether JCF's claims for profit and overhead are for public work material and labor and therefore recoverable under chapter 2253. Furthermore, assuming any of the overhead and profit was properly allocable to public work material or labor, the amount of such allocation might have varied by month. Because Liberty Mutual is challenging JCF's ability to recover for *any* claim during November 2006, a fact question exists as to the proper amount of overhead and profit allocable to November 2006.

Accordingly, we conclude that it was error to grant JCF's traditional motion for summary judgment. We therefore sustain appellants' tenth issue.

### *Attorney's Fees*

Because JCF was not entitled to default or summary judgment against appellants, we sustain appellants' twelfth issue and reverse the trial court's award of attorney's fees.

### CONCLUSION

We conclude that the trial court abused its discretion in rendering default judgment against appellants as a death-penalty sanction for discovery abuse. The trial court also erred in granting summary judgment against appellants in favor of JCF. We reverse the trial court's judgment and remand the cause for further proceedings.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Reversed and Remanded

Filed:   April 8, 2010